**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Homer Lee TUCKER, Defendant–Appellant.**

**No. 87–5090.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 26, 1992 *.

Submission Deferred March 2, 1992.

Resubmitted March 25, 1992.

Decided May 20, 1992.

Elizabeth N. Brancart, Brancart & Brancart, Orange, Cal., for defendant-appellant.

Jean E. Gilliland, Asst. U.S. Atty., Major Crimes Section, and Steven E. Zipperstein, Asst. U.S. Atty., Chief, Criminal Appeals, Los Angeles, Cal., for plaintiff-appellee.

* The panel unanimously finds this case suitable for decision without oral argument per Fed. R.App.P. 34(a) and 9th Cir.R. 34–4.

Before: CANBY, NORRIS, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

In this case we are called upon to decide whether our supervisory power should be applied to reverse a criminal conviction on the ground that extreme delay in filing a trial transcript resulted in a denial of the appellant's due process rights. We reject the government's argument that there was no due process violation and therefore no ground for exercising our supervisory power, and reverse the conviction.

## PRIOR PROCEEDINGS

On May 7, 1986, a federal grand jury handed down a ten-count indictment charging Homer Lee Tucker ("Tucker" or "appellant") and Edwin Dale Houtchens ("Houtchens") with wire fraud (18 U.S.C. § 1343, eight counts) and interstate transfer of funds obtained through fraud (18 U.S.C. § 2314, two counts) arising out of their scheme to induce California residents to invest in a fraudulent Texas oil drilling lease. Tucker entered a plea of not guilty to all ten counts, and trial was set for November 4, 1986.

When Houtchens failed to appear, the district court continued the trial to November 25, 1986. Houtchens' subsequent failures to show led to further continuances until, on January 27, 1987, Tucker proceeded to trial along with his codefendant, who was tried *in absentia.* The jury convicted Tucker and Houtchens on all counts. On March 18, 1987, the district court sentenced Tucker to a total of five years' imprisonment and five years' probation.[1] Tucker timely appealed.

We received the appellant's Transcript Designation and Order Form on June 12, 1987. On September 28, 1987, Court Reporter Pamela Daily ("Daily") filed a motion for an extension of time in which to file the transcripts. We granted the motion and set a due date of November 12, 1987, for the filing of Tucker's opening brief. On July 13, 1988, we ordered Daily to file within seven days either the transcripts or a motion for extension of time. We issued a similar order on March 10, 1989, and again on April 12, 1989.[2]

On May 1, 1989, we ordered the substitution of appellate counsel for Tucker and extended the due date for the filing of his trial transcripts to July 12, 1989. On July 24, 1989, Daily filed a belated motion for extension of time, asking that she be given until August 28, 1989, in which to file the transcripts. We granted her motion, but by September 22, 1989, the transcripts still had not been filed.

Tucker thereupon filed a motion for summary reversal of his conviction, arguing that the court reporter's repeated failures to file his transcripts had effectively deprived him of his right of appeal and thereby denied him due process of law. On October 6, 1989, Daily filed yet another motion for extension of time to file the transcripts. We denied the motion and ordered her to file the transcripts within ten days of our order (filed December 4, 1989).

Daily eventually filed an incomplete transcript on January 30, 1990. On February 21, 1990, and again on March 30, 1990, we ordered her to file a complete transcript within seven days. Daily failed to comply with either order, and on June 6, 1990, we again ordered her to file the remainder of the transcript within seven days. Six days later Daily finally filed the complete transcript.[3]

---

**1.** More precisely, Tucker was sentenced to concurrent prison terms of five years on each of the first eight counts, a suspended sentence on counts 9 and 10, and five years' probation on count 1 upon his release from custody, with probation "to run concurrent on each count and consecutive to counts one through eight". In addition, he was ordered to pay $102,000 in restitution.

**2.** In our orders of March 10 and April 12, we granted Daily fourteen days in which to respond.

**3.** Daily's alacrity in complying with our final order was no doubt prompted by its no-nonsense tone. That order read, in relevant part: "If Ms. Daily fails to file the transcript, or fails to submit proof of service to this court or the

Tucker raised two arguments in his opening brief: First, he should be granted a summary reversal of his conviction because the court reporter's extraordinary delay in filing his transcripts effectively deprived him of his right to an appeal and thereby denied him due process of law; and second, the district court committed plain error by conducting a joint trial with an absent codefendant. On March 2, 1992, we ordered the parties to file supplemental briefs on the question whether, "in the exercise of [our] supervisory power over the administration of justice in this circuit, [we should] reverse appellant's conviction and order dismissal of the indictment against him due to the extreme delay in processing his appeal[.]" Both parties having now briefed this issue, we turn to a discussion of its merits.

## DISCUSSION

■ As a general proposition, we have the express statutory authority to "reverse any judgment ... and ... remand the cause and direct the entry of such appropriate ... order ... as may be just under the circumstances." 28 U.S.C. § 2106. However, we also have the inherent supervisory power to formulate procedural rules not specifically required by Congress or the Constitution. *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Despite the apparent breadth of the latter, we may exercise our supervisory power only "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter

illegal conduct." *United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir. 1991).

As already noted, Tucker argues that the extreme delay he suffered in processing his appeal violated his right to due process and warrants the exercise of our inherent supervisory power in favor of a summary reversal of his conviction. His argument is grounded on the principle that, while a person convicted of a crime is entitled to an appeal as a matter of right, extreme delay in the processing of that appeal may constitute a violation of the appellant's right to due process. *See Coe v. Thurman,* 922 F.2d 528, 530 (9th Cir.1990).

■ In *United States v. Antoine,* 906 F.2d 1379 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990), we adopted the Fifth Circuit's four-part test for evaluating alleged due process violations resulting from appellate delay.[4] The four elements of that test are the length of the delay, the reasons for the delay, the defendant's assertion of his right to a timely appeal, and the degree of prejudice to the defendant. *Id.* at 1382.

■ With respect to the first three elements, we note that the length of the delay in the instant case is longer than that of *Antoine,* nearly all of this delay must be attributed to a dilatory court reporter, and it is undisputed that Tucker diligently asserted his right to the prosecution of his appeal. The fourth element, *viz.,* prejudice, is more complex and in turn requires an examination of three factors: "1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party awaiting the outcome of the appeal; and 3)

United States Marshal, the United States Marshal shall proceed immediately to arrest and confine Ms. Daily with her notes and transcribing equipment until she has completed the transcript for February 3, 1987, including the transcription of all jury instructions and all closing arguments. Should incarceration be necessary, the Marshal is directed to assist Ms. Daily in obtaining the necessary notes and equipment. Ms. Daily shall be released upon providing the transcript to the Marshal. Should Ms. Daily fail to comply with this order, the district court is requested to issue promptly a bench warrant for Ms. Daily's arrest."

4. First enunciated in *Rheuark v. Shaw,* 628 F.2d 297, 303 n. 8 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981), the Fifth Circuit's four-part test is adapted from the test for pretrial delay set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), and has been adopted by at least one other circuit. *See United States v. Johnson,* 732 F.2d 379, 381–82 (4th Cir.), *cert. denied,* 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984).

impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." *Coe,* 922 F.2d at 532 (citing *Antoine,* 906 F.2d at 1382).

With respect to the first factor, we decline to hold that Tucker's incarceration was oppressive, because we find no merit to his contention that the district court erred by trying him jointly with his absent codefendant. *Cf. Coe,* 922 F.2d at 532 (incarceration is reasonable and not oppressive if conviction is affirmed); *Antoine,* 906 F.2d at 1382 (same). As for the second factor, Tucker's "undoubted[ ] ... anxiety and concern during the protracted pendency of this appeal [are] no more than [those of] any other prisoner awaiting the outcome of an appeal." *See Coe,* 922 F.2d at 532 (citation and internal quotation omitted).

Turning to the third factor, however, we note that "the passage of [five] years will make it more difficult for petitioner to refresh the memory of witnesses or locate new exculpatory evidence. Though we hesitate to find extreme and fulsome prejudice to [Tucker], we believe enough exists here to satisfy this fourth" element of prejudice. *See Coe,* 922 F.2d at 532 (citation and internal quotation omitted).

The government argues that, even if all four of the *Antoine* elements are present in this case, we should not exercise our supervisory power in the manner requested by the appellant because the delay here is a "self-inflicted wound", *i.e.,* it is attributable in part, at least, to our own failure to supervise the actions of a dilatory court reporter. The government urges that the provisions of 28 U.S.C. § 753(c),[5] Fed. R.App.P. 11(b),[6] and 9th Cir.R. 11–1[7] provide us with all the authority we need to protect future appellants from sluggish court reporters, and therefore asks us to follow instead the course of action we employed in the case of *Seco Nevada, Inc. v. McMordie (In re Holloway),* 884 F.2d 476 (9th Cir.1989), where we imposed a $250 fine and a $50 per day sanction on a court reporter for every day beyond the final deadline the transcripts remained unfinished. *Id.* at 477–78.

We agree with the government's characterization of the sorry state of this appeal as being in part, at least, a "self-inflicted wound", and we have no doubt that this Court will redouble its efforts in the future to ensure that the delays experienced by the appellant here will not be inflicted on another unsuspecting litigant. Nevertheless, we reject the notion that our supervisory power does not extend to the correction of abuses which are attributed in part to the lack of appellate supervision of a dilatory court reporter. The harm has been done, and we have both the power and the obligation to remedy it.

**5.** 28 U.S.C. § 753(c) reads, in its entirety: "The [court] reporters shall be subject to the supervision of the appointing court and the Judicial Conference in the performance of their duties, including dealings with parties requesting transcripts."

**6.** Rule 11(b) of the Federal Rules of Appellate Procedure reads, in relevant part: "Upon receipt of an order for a transcript, the [court] reporter shall acknowledge at the foot of the order the fact that the reporter has received it and the date on which the reporter expects to have the transcript completed and shall transmit the order, so endorsed, to the clerk of the court of appeals. If the transcript cannot be completed within 30 days of receipt of the order the reporter shall request an extension of time from the clerk of the court of appeals and the action of the clerk of the court of appeals shall be entered on the docket and the parties notified. In the event of the failure of the reporter to file the transcript within the time allowed, the clerk of

the court of appeals shall notify the district judge and take such other steps as may be directed by the court of appeals. Upon completion of the transcript the reporter shall file it with the clerk of the district court and shall notify the clerk of the court of appeals that the reporter has done so."

**7.** Rule 11–1.1 of the Ninth Circuit Rules reads, in its entirety: "The [court] reporter's transcript shall be filed in the district court within 30 days from the date the Transcript Designation/Ordering Form is filed with the district court, pursuant to the provisions of FRAP 11(b) and in accordance with the scheduling orders issued by the court for all appeals. Upon motion by a reporter, the Clerk of the Court of Appeals or a designated deputy clerk may grant a reasonable extension of time to file the transcript. The grant of an extension of time does not waive the mandatory fee reduction for the late delivery of transcripts unless such waiver is stated in the order."

The judgment of conviction is RE-VERSED and the case is REMANDED with instructions to dismiss the indictment.