978 F.2d 716
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leon C. FOSTER, Defendant-Appellant.
 No. 89-10405.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1992.
Decided Oct. 16, 1992.
 
 Before WALLACE, Chief Judge, POOLE, Circuit Judge, and MARSH, District Judge*
 MEMORANDUM**
 Defendant-appellant, Leon Clifford Foster, appeals his conviction, following a jury trial, for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846, possession of a firearm in relation to a drug transaction in violation of 18 U.S.C. § 924; and possession of methamphetamine in violation of 21 U.S.C. § 844. Foster raises numerous claims of error in this appeal and for the reasons which follow, we reverse in part, affirm in part and remand.
 1. Conspiracy Instruction
 Appellant's first claim is that the district court erred by failing to instruct the jury that proof of an overt act is necessary to convict him of a drug conspiracy. As we have recently held, the omission of this element from a jury instruction is error. United States v. Harrison-Philpot, No. 89-30212, slip op. 7907, 7916 (9th Cir. July 2, 1992); and United States v. Garza, No. 91-30240, slip op. 7425, 7437 (9th Cir. June 29, 1992). However, such an error is harmless if "no rational jury could have made [its] findings without also finding the omitted or presumed fact to be true." Garza, slip op. at 7437 (quoting Martinez v. Borg, 937 F.2d 423, 425 (9th Cir.1991)).
 In both Harrison-Philpot and Garza we held that the failure to include the overt act element of the conspiracy instruction was harmless.[1] However, unlike Harrison-Philpot and Garza, application of the harmless error standard to the facts in this case poses a difficult task.
 First, Garza is clearly distinguishable from the instant case because the jury also convicted Garza on a separate count which charged him with a substantive offense of distribution in furtherance of the conspiracy. Id., at 7437. In this case, there was no separate substantive charge against Foster which constituted an overt act in furtherance of the conspiracy to manufacture methamphetamine as charged in count one. The government attempts to rely upon Foster's conviction for possession of methamphetamine charged in count three to harmonize this with Garza. However, there was no evidence connecting the methamphetamine found in Foster's bedroom to the alleged conspiracy to manufacture methamphetamine. No lab or lab equipment was ever found and the evidence, when viewed in the light most favorable to the government, indicated that only two of the approximately seven necessary precursor chemicals were purchased prior to Foster's arrest. Because there was no evidence of actual production, it was impossible to determine if the drugs found in the bedroom could have been produced by the same processing method intended by the conspiracy. Finally, in sentencing the defendant on the conspiracy count, the court determined that the drugs seized in the bedroom did not adequately reflect the scope of the conspiracy and, instead, relied solely upon the chemical purchases of co-defendant Sandra Ward to approximate the quantity of methamphetamine producible by the conspiracy.
 Although Harrison-Philpot also involved seven substantive counts of cocaine distribution, we found that her convictions on these counts could not satisfy the overt act requirement of the conspiracy charge because the jury was also instructed on a Pinkerton theory. slip op. at 7916, n. 3. However, Harrison-Philpot testified at trial, admitting that she was a drug user and conceding that she assisted in drug distribution. Id., at 7911. Her only defense was that she was not involved in the conspiracy on the date alleged in the indictment. We rejected Philpot's challenge that the indictment impermissibly left the effective dates of the conspiracy open-ended by use of terms such as "sometime around," and noted the existence of overwhelming and undisputed evidence that "a large distribution ring was being run out of Philpot's home." In light of the undisputed evidence of substantive illegal acts, we determined that the jury "necessarily found that an agreement to distribute cocaine existed [since] there was no evidence of such an agreement ... apart from the innumerable overt acts." Id., at 7917. Thus, in a conviction for a drug conspiracy, if a jury, in reaching its verdict, necessarily must have found the existence of the missing element, the error is harmless. Conversely, if a reasonable jury could have convicted a defendant without finding the omitted element, a new trial is necessary.
 Our decision in Harrison-Philpot is distinguishable from the facts in this case in at least two critical respects. First, in this case there was direct evidence of an "agreement" based upon Ward's statements that she agreed to purchase chemicals at Foster's direction and knew that he was probably manufacturing drugs. Second, the key facts establishing the overt acts in this case were disputed by Foster in each material respect. At trial, Ward testified that she made the purchases at Foster's direction and delivered them to his house. However, Foster testified at trial and refuted each of these assertions. The chemicals Ward said she purchased were never found and the government's corroboration of Ward's version of events was tenuous. Although the jury may well have believed Ward's testimony over Foster's testimony about these sales, the court's failure to instruct the jury that it had to find that there was an overt act committed in furtherance of the conspiracy charged meant that the jury could convict the defendant without resolving this critical factual dispute. Thus, in this case, the jury could have found evidence of an agreement without finding that any substantive overt act was committed in furtherance of the conspiracy charged in count one.
 In addition, the evidence that Foster conspired to manufacture methamphetamine is far less substantial than the evidence in Harrison-Philpot or Garza, particularly when we compare the crime charged to the evidence. The convictions for conspiracy to distribute controlled substances in Harrison-Philpot and Garza rested upon evidence of numerous completed drug transactions. However, in this case Foster was charged with conspiring to manufacture methamphetamine based largely upon disputed evidence that Ward obtained two precursor chemicals and delivered them to Foster. The two precursors allegedly purchased by Ward were never located.
 Thus, in comparing the evidence in this case against the scope of the charge against defendant, we find that a rational jury could have convicted Foster of conspiracy without finding that any member of the conspiracy committed an overt act in furtherance thereof. Accordingly, we conclude that the erroneous instruction was not harmless and that Foster is entitled to a new trial on the charges contained in counts one and two.
 Because of this finding, we need not decide several of Foster's other claims of error. However, in addition to challenging the sufficiency of the evidence to support his conviction for count three, Foster also raised several claims which we find are errors which will require correction on remand.
 2. Sufficiency of the Evidence: Possession
 This court reviews the sufficiency of the evidence to determine whether "reviewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.1992), pet. for cert. filed July 27, 1992. Circumstantial evidence and inferences drawn therefrom will be sufficient to sustain a conviction. Id. Because defendant did not move for judgment of acquittal at the close of his case, this court reviews the sufficiency of the evidence arguments only for "plain error to prevent a miscarriage of justice." United States v. Winslow, 962 F.2d 845, 850 (9th Cir.1992).
 Foster contends that there was insufficient evidence to convict him of possession of the methamphetamine found in the bedroom at the apartment on Jones Road.
 To prove constructive possession, the government must prove that defendant had "sufficient dominion and control to give him the power of disposal." United States v. Hernandez, 876 F.2d 774, 778 (9th Cir.) (quoting United States v. Castillo, 866 F.2d 1071, 1086 (9th Cir.1989), cert. denied, 493 U.S. 863 (1989). Thus, mere proximity to the contraband, presence in a location where contraband is found or association with persons having control over contraband are insufficient. Id. A possessory interest in the location searched raises an "inference" of constructive possession. Id.
 In this case it would not be plain error for a jury to infer that appellant had dominion and control over the methamphetamine based upon Foster's admitted knowledge of his wife's drug use and his joint control over and access to the apartment and bedroom where the drugs were discovered. In addition, there was circumstantial evidence such as the vita-blend, scales, baggies and gun which the jury may have relied upon in finding that Foster possessed the drug with knowledge. Accordingly, we affirm his conviction on count three.
 3. Voir Dire
 We review the sufficiency of voir dire questions for "abuse of discretion." United States v. Dischner, 960 F.2d 870, 890 (9th Cir.1992). A trial court's exercise of discretion with respect to voir dire is limited by the need to assure a fair trial by an impartial jury. United States v. Jones, 722 F.2d 528, 529 (9th Cir.1983). One of the rationales behind this rule is to preserve the right of a defendant to "exercise his peremptory challenges intelligently." United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir.1979) (quoting Cook v. United States, 379 F.2d 966, 971 (5th Cir.1967)).
 In Jones, this court identified three instances in which there may be a need for specific voir dire questioning: (1) where the case carries racial overtones; (2) when the case involves matters in which the community is known to harbor strong feelings (such as the insanity defense); or (3) when the case involves other forms of bias (such as the tendency of some jurors to overvalue testimony of government agents). Jones, 722 F.2d at 529-30, (citations omitted).
 Although the discretion accorded a trial judge in conducting voir dire is extremely broad, "he must exercise a sound judicial discretion in the acceptance or rejection of supplemental questions proposed by counsel," especially in those instances in which the judge decides to conduct the voir dire. Baldwin, 607 F.2d at 1297. For example, we have rejected an appeal where the trial court refused to question the jury regarding general attitudes about the theory of the defense. See e.g. Jones, 722 F.2d at 530 (coercion defense); compare United States v. Goland, 959 F.2d 1449, 1454 (9th Cir.1992) (questions about campaign participation and familiarity with election laws adequately tested juror bias in trial for violations of Federal Election Campaign Act).
 First, we find that defendant has come forward with evidence to show that cock fighting is a concern in the state of California as evidenced by the 1988 statute which criminalizes such activity. Assuming the community harbors strong feelings about cockfighting, we conclude that Foster's activities as a chicken rancher and fancier of gamecock fighting was collateral both to the case and his defense at trial. If Foster wants to prevent the jury from hearing evidence about cockfighting at the retrial, he may tailor his defense to eliminate such references and move in limine to exclude any references to cockfighting as prejudicial. Foster's defense that he raised chickens, however, is not impaired by exclusion of the cockfighting issue. Because this issue is collateral both to the subject matter of this case and to Foster's defense, we hold that the district court did not abuse its discretion in declining to question the jury on this issue.
 4. Due Process
 a. Failure to record the jury instructions
 There is no dispute that the court, by his own local custom, did not have the jury instructions recorded. Judge Tanner read the instructions to the jury and filed a copy of what he read in the original file. Neither party raised an objection to the procedure at the time of trial. Following appellant's Rule 10(c) motion, the district court entered an order certifying that the jury instructions filed were the jury instructions actually given.
 Pursuant to 28 U.S.C. § 753(b), court reporters are required to record verbatim "all proceedings in criminal cases had in open court." The provisions of § 753 are mandatory and supplant any inconsistent local custom. However, a violation of the Act does not require reversal unless the complainant can demonstrate specific prejudice. United States v. Antoine, 906 F.2d 1379, 1381 (9th Cir.), cert. denied, 111 S.Ct. 398 (1990); and United States v. Carillo, 902 F.2d 1405, 1409-10 (9th Cir.1990). Lack of a verbatim transcript is not a substantial omission or a constitutional defect when a suitable alternative is provided.
 In this case, after the issue was re-submitted to the district court pursuant to Fed.R.App.P. 10, he settled the record following written submissions from counsel. Foster attempts to create a factual dispute because Ward's counsel apparently could not remember if the "supplemental instruction" he requested was on intent or knowledge. However, all counsel who could recall the proceeding confirmed the judge's finding that the filed instructions accurately reflected what was read to the jury. Thus, there is no factual dispute which would give rise to prejudice or the need for an evidentiary hearing.
 The reporter's failure to record the jury instructions is a violation of section 753(b), which should not be repeated in the event of a retrial. However, because Foster has failed to demonstrate prejudice, we find the error harmless.
 b. Court Reporter's Delay
 Foster contends that his appellate process was delayed for twenty-six months due to the court reporter's failure to timely prepare and file complete trial transcripts.
 Courts have recognized that extreme delay in processing an appeal may amount to a violation of due process. Antoine, 906 F.2d at 1382. In United States v. Tucker, 964 F.2d 952 (9th Cir.1992), we exercised our supervisory power to reverse a conviction for a court reporter's three year delay in preparing transcripts on appeal. We employed the following four-part test adopted in Antoine to evaluate whether the delay resulted in a violation of appellant's due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) defendant's assertion of his right to a timely appeal; and (4) the degree of prejudice to the defendant. Id., at 954. The last element requires examination of three factors: "1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party pending appeal; and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." Id., at 954-55, citing Coe v. Thurman, 922 F.2d 528, 532 (9th Cir.1990).
 Under the circumstances in Tucker, we found that "nearly all" of the three year delay in processing the appeal was attributable to the court reporter. We emphasized that the reporter had failed to respond in a timely fashion even after seven orders from this court which culminated in a final order directing her to complete the transcript or be placed under arrest by the U.S. Marshal. In Antoine, we noted a three year delay was a "substantial amount of time," and found that at least two years of that time was attributable to the "unwillingness or inability of the court reporter to produce the transcript of the trial." 906 F.2d at 1382. However, we declined to reverse his conviction, finding instead that any determination of prejudice was premature since it was uncertain "whether the delay has impaired Antoine's grounds for appeal or may impair his defense in the event of retrial." Id, at 1383.
 Of the twenty six month delay in processing this appeal, at least three months were due to Foster's delay in complying with this court's order that he comply with Fed.R.App.P. 10(c) and attempt to reconstruct the record. Assuming that the delay attributable to the government in this case was approximately two years, that is the same amount of time which we held was "substantial" in Antoine. The delay appears to be largely attributable to the court reporter. Thus, the first and second elements of the Antoine test favor Foster.
 As in Antoine, the assessment of prejudice is more problematic. The fact that Foster has been incarcerated "awaiting the outcome of the appeal" is not oppressive if a conviction is affirmed. Antoine, 906 F.2d at 1382; and Coe, 922 F.2d at 532. However, these cases leave open the question of whether incarceration might be oppressive if the conviction is reversed and remanded.
 
 
 1
 Because we remand this case for a new trial, we will follow Antoine and remand the issue of prejudice attributable to the delay to the district court for factual findings as to the first two counts of the indictment.
 
 
 2
 All other claims of error are mooted by this disposition.
 
 
 3
 Appellant's conviction for possession of methamphetamines is AFFIRMED. Appellant's convictions for conspiracy to manufacture methamphetamine, and for possession of a firearm are REVERSED, and the case is REMANDED for further proceedings consistent with this disposition.
 
 
 
 *
 Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In this case, as in Harrison-Philpot and Garza, the jury was instructed that in order to convict the defendant of conspiracy, the government must establish: (1) the existence of an agreement to violate the Controlled Substances Act; and (2) that the defendant joined the conspiracy