UNITED STATES of America,
Plaintiff–Appellee,

v.

Homer Lee TUCKER, Defendant–
Appellant.

No. 87–5090.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En
Banc June 24, 1993.

Decided Oct. 29, 1993.

Elizabeth N. Brancart and Christopher Brancart, Brancart & Brancart, Pasadena, CA, for defendant-appellant.

Miriam A. Krinsky, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, HUG, FLETCHER, NORRIS, BEEZER, KOZINSKI, NOONAN, THOMPSON, RYMER, T.G. NELSON, and KLEINFELD, Circuit Judges.

WALLACE, Chief Judge:

We are called upon in this appeal to consider the limits on our supervisory powers. Tucker contends that we have the power and obligation to reverse his criminal conviction and dismiss the indictment against him because of excessive delay in hearing his appeal due to the failure of a court reporter to file a transcript of his trial in a timely manner. We hold that we may not exercise our supervisory powers absent a showing of prejudice. Because Tucker has not met this burden, we withdraw the panel opinion and affirm his conviction.

I

A federal grand jury indicted Tucker and Houtchens on eight counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of interstate transfer of funds obtained through fraud, in violation of 18 U.S.C. § 2314. The indictment alleged that Tucker and Houtchens had concocted a scheme to induce California residents to invest in a fraudulent oil drilling venture in Texas. Houtchens failed to appear for trial three times, and the district court continued the trial. After Houtchens again failed to appear on January 27, 1987, the district court proceeded to trial against Tucker and Houtchens, the latter tried in absentia. Tucker was convicted on all ten counts and, on March 18, 1987, the district court imposed sentence.

Tucker filed a notice of appeal on the same day. Due to the repeated failures of the court reporter to meet the deadlines imposed by this court, Tucker's counsel's failure to pursue the preparation of the transcript adequately (see Fed.R.App.P. 11(a)), and this court's failure to enforce the reporter's deadlines sufficiently, the complete transcript was not filed until June 13, 1990.

A panel of this court concluded that the extreme delay in filing the transcripts effectively denied Tucker his right to a timely appeal. 964 F.2d 952 (9th Cir.1992), *rehearing granted,* 991 F.2d 1518 (9th Cir.1993). Exercising its supervisory powers, the panel reversed Tucker's conviction and remanded to the district court with instructions to dismiss the indictment.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

II

Although we have supervisory power, the circumstances under which we may exercise that power are substantially limited. *United States v. Gatto,* 763 F.2d 1040, 1045–46 (9th Cir.1985) (*Gatto*). We can, "within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (*Hasting*) (internal citations omitted).

Even within these limited grants of power, a federal court may not exercise its supervisory authority to reverse a conviction or dismiss an indictment absent prejudice to the defendant. In *Hasting,* the Seventh Circuit had overturned a conviction in order to discipline a prosecutor for commenting on a defendant's silence. The Court disagreed and held that a federal court may not exercise its supervisory power to reverse a conviction when the alleged error is harmless. *See id.* at 505–07, 103 S.Ct. at 1978–79. The

Court determined that "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." *Id.* at 506, 103 S.Ct. at 1979. Further, the Court stated that the "integrity of the [judicial] process carries less weight" when an error is harmless because "there is no 'reasonable possibility that the [practice] complained of might have contributed to the conviction.'" *Id., quoting Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). Finally, the Court pointed out that "deterrence is an inappropriate basis for reversal ... where means more narrowly tailored to deter objectionable prosecutorial conduct are available." *Id.*

The Court elaborated on this analysis in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (*Bank of Nova Scotia*), in which it held that federal courts "may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)." *Id.* at 254, 108 S.Ct. at 2373. The Court rested its holding on the rule that an exercise of supervisory power "is invalid if it conflicts with constitutional or statutory provisions," including Rule 52(a). *Id.* (internal quotation omitted). The district court had dismissed an indictment for prosecutorial misconduct in a grand jury investigation. The Court concluded that the defendants had not been prejudiced by the alleged prosecutorial misconduct and that, as a result, the district court was barred from invoking its supervisory powers to dismiss the indictment. *See id.* at 263–64, 108 S.Ct. at 2378. In observing that alternative remedies exist for errors which cause a defendant no prejudice, the Court stated in a passage relevant to this appeal that "[s]uch remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." *Id.* at 263, 108 S.Ct. at 2378.

We have also emphasized the importance of prejudice as a trigger to the exercise of supervisory power. In *United States v. Isgro,* 974 F.2d 1091 (9th Cir.1992) (*Isgro*), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 1581, 123 L.Ed.2d 148 (1993), for example, we held that before a court may invoke its supervisory power, it "must first find that the defendant is actually prejudiced by the misconduct." *Id.* at 1094. We also observed that the Supreme Court has moved "toward a rule that a court should not use its supervisory powers to mete out punishment absent *prejudice* to a defendant." *Id.* at 1097 (emphasis in original). We pointed out that *Hasting* "unequivocally rejects the idea that a court may sanction the government for its misconduct without considering first the actual prejudice suffered by the defendant." *Id.*

 This case is not identical to the opinions discussed above: it does not involve either pretrial or trial error or prosecutorial misconduct. Nonetheless, the rationale underpinning the Court's decisions in *Hasting* and *Bank of Nova Scotia* applies with full force to cases of appellate delay. Ordinarily, where the claims asserted on appeal would not entitle the defendant to reversal, appellate delay does not result in prejudice. *See Hasting,* 461 U.S. at 506, 103 S.Ct. at 1979. As with pretrial and trial errors, therefore, supervisory power is not needed to reverse a conviction in this circumstance. In addition, the concern for judicial integrity "carries less weight" where the delay on appeal is not prejudicial, *id.,* and a court of appeals "may not disregard the doctrine of harmless error" in order to punish what it views as the misconduct of a court reporter. *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374. There is simply no reason that a federal court should exercise its supervisory power in a way that benefits a party that is not harmed by the delay. *Cf. id.* at 263, 108 S.Ct. at 2378 (dismissing indictment would grant an unwarranted "windfall" to unprejudiced defendant); *Isgro,* 974 F.2d at 1099 (same).

### III

We turn now to the merits of this appeal. Tucker contends that the excessive delay in hearing his appeal denied him due process of law. He also contends that the district court committed plain error in trying him along with his absent codefendant. Tucker there-

fore asserts that his conviction must be reversed.

■ We have recognized that "extreme delay in the processing of an appeal may amount to a violation of due process." *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.), *cert. denied*, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990). We found four areas of inquiry helpful in evaluating appellate delay claims: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to appeal; and (4) the prejudice to the defendant. *Id.*

The fourth inquiry is the most important: "a due process violation cannot be established absent a showing of prejudice to the appellant." *Id.* We have in turn analyzed this issue by focusing on three types of potential prejudice from appellate delay: "(1) oppressive incarceration pending appeal, (2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and (3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." *Id.*

■ As to the first, Tucker's incarceration was not oppressive because his appeal is meritless. Tucker argues that the district court should have severed the trials of Tucker and his absent codefendant, Houtchens, though Tucker made no severance motion. We review for plain error, *United States v. Sanchez*, 532 F.2d 155, 158 (9th Cir.1976), and hold there is none. "[A] district court should grant a severance ... only if there is serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). Tucker's theory is that Houtchens's flight would make him look guilty by association. But Houtchens's absence also allowed Tucker to shift the blame onto Houtchens. Failure to move for severance may have been strategic. Thus, a joint trial did not pose a serious risk upon which the district judge should have acted sua sponte. The district court did not commit plain error in not severing, on its own motion, his trial from that of his absent codefendant. *Cf. id.* (stating that if defen-

dant's "conviction was proper, there has been no oppressive confinement; he has merely been serving his sentence as mandated by law"). As to the second kind of prejudice, Tucker "has undoubtedly experienced anxiety and concern during the protracted pendency of this appeal," but has made no showing that it was to such a degree as "would distinguish his case from that of any other prisoner awaiting the outcome of an appeal." *See id.* at 1382–83. Finally, as we stated above, Tucker's appeal lacks merit. Therefore, the third concern is not implicated because the delay has not impaired Tucker's grounds for appeal or impaired his defense in the event of retrial. *See id.* at 1383. Had Tucker received timely decision of his appeal, he still would not have succeeded. He has not been prejudiced in any way by the court reporter's unreasonable delay in completing the transcripts of the trial court proceedings.

Even assuming that the court reporter's dilatory conduct violated some statutory right of Tucker, a right we have been unable to identify, Tucker was not entitled to have his conviction reversed and his case remanded for dismissal of the indictment. As we discussed above, a federal court may not exercise its supervisory powers to reverse a conviction absent a showing of prejudice. Tucker violated the law and was found guilty at a fair trial. Although his appeal took an unfortunately long time, Tucker received all he was due from the legal process. We cannot reverse this validly obtained conviction to punish *a court reporter*, even under the theory that we are merely cleaning our judicial house. The result would not be solely in our house; it would impact the government directly, if not exclusively. Separation-of-powers principles, therefore, are necessarily and unavoidably implicated. *See Isgro*, 974 F.2d at 1097; *Gatto*, 763 F.2d at 1046. In maintaining order in our own house, we should not needlessly trample on the interest of the prosecutor and of the public in securing proper, lasting convictions. Tucker was not harmed by the delay in hearing his appeal. In this circumstance, reversing his conviction and dismissing the indictment against him would undermine rather than preserve judicial integrity.

The prejudice requirement is clearly established by Supreme Court precedent. We are not free to ignore it. Because Tucker has not demonstrated that he was prejudiced by the delay in hearing his appeal, we must affirm his conviction.

## IV

This is not to say that the federal courts are without power to rectify such a situation in the future. We undoubtedly have the authority to sanction dilatory court reporters. *See In re Holloway,* 884 F.2d 476, 478 n. 3 (9th Cir.1989). In *Holloway,* for example, we required the court reporter to pay a $250 fine and an additional $50 for every day beyond the deadline imposed by us until the transcripts were filed. *Id.* at 477–78. We also referred the matter to the United States Attorney "for a review of any representations made by [the court reporter] in obtaining employment as a reporter in this matter." *Id.* at 478. The case before us also demonstrates the efficacy of alternative remedies: the court reporter here was quick to finish the transcripts after we entered an order instructing the United States Marshal to arrest and confine her if she failed to finish the transcripts within seven days. As the Court observed in *Bank of Nova Scotia,* "[s]uch remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." 487 U.S. at 263, 108 S.Ct. at 2378.

AFFIRMED.

WILLIAM A. NORRIS, concurring:

The majority holds that we may not use the supervisory power of the federal judiciary to remedy extreme appellate delay without a showing of trial prejudice. I write separately because, without analysis, the majority unnecessarily diminishes the supervisory power of the federal judiciary by accepting *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), as controlling authority even though this is a case of appellate delay rather than trial error. In so doing, the majority effectively forecloses the use of supervisory power by the federal judiciary to remedy appellate delay without first considering whether this appeal can and should be decided on narrow prudential grounds.

The original panel relied upon *United States v. Antoine,* 906 F.2d 1379 (9th Cir.), *cert. denied,* 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990), in holding that we had the authority to use the supervisory power of the federal judiciary to dismiss Tucker's indictment because he was subjected to extreme appellate delay through no fault of his own. The panel applied *Antoine*'s four-part test for determining whether appellate delay violated due process and determined Tucker easily passed the first three parts of the test. *See U.S. v. Tucker,* 964 F.2d 952, 955 (9th Cir.1992), *rehearing granted,* 991 F.2d 1518 (9th Cir.1993) (reasoning that the length of the delay was longer than in *Antoine,* a dilatory court reporter caused almost all of the delay, and Tucker diligently pursued his appeal). To this extent the original panel's opinion and the majority's opinion agree. The opinions diverge, however, in applying the fourth part of the *Antoine* test: whether the defendant was prejudiced by the delay. *See Antoine,* 906 F.2d at 1382.

*Antoine*'s prejudice element requires consideration of three factors: "1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party awaiting the outcome of the appeal; and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." *Id.* Although the original panel determined that the first two factors did not apply to Tucker, it decided that the appellate delay experienced by Tucker satisfied the third factor even though he was not entitled to a retrial. *Tucker,* 964 F.2d at 955. The en banc majority disagrees on this point, reasoning that Tucker does not satisfy the third *Antoine* factor—prejudice on retrial—because his appeal is meritless. In other words, Tucker can experience no prejudice on retrial because his original conviction must be affirmed on the merits. The majority's logic is compelling, and I concede that the original panel's opinion is flawed in this respect. Nonetheless, I cannot join the majority's opinion because the majority's analysis is flawed in a different respect. I disagree with the majority that *United States*

*v. Hasting* is authority for the proposition that a showing of trial-related prejudice is a necessary condition to our exercise of supervisory power to redress the problem of appellate delay.

There is an analytical void in the majority's opinion. It makes no attempt to explain why *Hasting*, a case that involved prosecutorial misconduct at the trial level, should be read as controlling authority in this case of appellate delay. The majority simply reads—in my view, overreads—*Hasting* as authority for the sweeping proposition that "a federal court may not exercise its supervisory authority to reverse a conviction or dismiss an indictment absent prejudice to the defendant." Majority Opinion p. 674. In *Hasting* the Supreme Court addressed a much narrower question: "whether, *on this record*, in a purported exercise of supervisory powers, a reviewing court may ignore the harmless-error analysis of *Chapman*."[1] 461 U.S. at 505, 103 S.Ct. at 1978 (emphasis added). The Court held that the Seventh Circuit erred in reversing a conviction for prosecutorial misconduct at trial on the basis of its supervisory power without engaging in harmless error analysis. *Id.* at 505, 103 S.Ct. at 1978. In reversing the Seventh Circuit, the Supreme Court explained the harmless error rules: " '[a]ll of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having *changed the result of the trial.*' " *Id.* at 508, 103 S.Ct. at 1980 (quoting *Chapman,* 386 U.S. at 22, 87 S.Ct. at 827) (emphasis added). Notwithstanding the Court's focus on the effect of error on the outcome of the trial, the majority offers no explanation whatsoever why *Hasting* cannot or should not be distinguished from this case of extreme delay in the post-trial appeal. Nor does it explain the logic of measuring prejudice from appellate delay solely in terms of prejudice to the outcome of a trial.

The only trials that appellate delay could conceivably prejudice are *post*-appeal trials for the obvious reason that appellate delay can have no bearing on the outcome of a completed *pre*-appeal trial. Thus, in measuring prejudice from appellate delay solely in terms of prejudice to the outcome of a trial, the majority renders us helpless to provide relief from excessive appellate delay to the class of appellants most worthy of relief: those with meritorious appeals that entitle them not to a new trial, but to a reversal of their convictions, a dismissal of their indictments, and their unconditional release from prison.

We need look no further than *Antoine* for authority that we may measure prejudice from excessive appellate delay other than by its effect on the outcome of a trial. To be sure, *Antoine* recognizes the obvious potential of appellate delay for impairing the viability of the defense's case on retrial. 906 F.2d at 1382. Memories of key defense witnesses, for example, may fade, and some may even become unavailable to testify by the time of retrial for any number of reasons, including death. But *Antoine* goes on to recognize that appellate delay also has the potential for prejudice in a way that is unrelated to the outcome of trials: time spent in prison awaiting the outcome of the appeal can itself be a form of prejudice regardless of any impact the delay may have on retrial. *Id.* In its uncritical acceptance of *Hasting* as controlling authority, the majority fails to give any recognition to the hard fact that liberty interests are *directly* implicated by appellate delay.[2] Thus, by extending *Hasting*'s requirement of trial-related prejudice indiscriminately to cases of appellate delay, the majority mindlessly renders the federal judiciary powerless to use its supervisory power to combat the evils of appellate delay except in a single category of appeals: those

---

1. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that the harmless error rule applied under some circumstances to some constitutional violations. *Id.* at 22, 87 S.Ct. at 827.

2. More perplexing is the majority's failure to recognize the basic inconsistency in its reading

of *Hasting* and its reliance on *Antoine.* If, as the majority holds, *Hasting*'s trial-related definition of prejudice controls this case, the first two types of prejudice recognized by *Antoine*—prejudice in the form of oppressive incarceration and prejudice in the form of anxiety and concern while awaiting appeal—are placed beyond our reach.

which result in a reversal and remand for retrial.

But what does any of that have to do with Tucker? Nothing really. His appeal is a loser anyway, so the six years spent in prison waiting for us to decide his appeal is time he would have served no matter what. Fair enough. But suppose Tucker had a winning argument that there was insufficient evidence to sustain his conviction. Under the majority's rule of decision—that in the absence of trial-related prejudice, *Hasting* forecloses the use of supervisory power to remedy extreme appellate delay—Tucker would still be out of luck. In other words, the majority's indiscriminate application of *Hasting* to cases of appellate delay precludes the federal judiciary from using its supervisory power to provide some measure of relief to persons who languish in prison for years waiting for us to tell them that they are free to go home with no worries about a retrial because they should not have been sent to prison in the first place. Sorry, we would say, the Supreme Court told us in *Hasting* there is nothing we can do about the problem of extreme appellate delay unless the defendant wins a retrial rather than his unconditional freedom. I believe *Hasting* does not so limit our authority; appellate delay and trial error are conceptually incongruent.

In expanding *Hasting*'s rule of decision to cases of appellate delay, the majority forecloses the use of supervisory power to minimize the risk that appellate delay will take an unnecessary toll on the liberty of the innocent. For example, the majority eliminates the possibility of adopting a prophylactic rule that may benefit Tucker today, but would also benefit the innocent in the future. The reversal of Tucker's conviction on the ground it has taken six years to decide his appeal would build into the appellate process a powerful incentive to provide all incarcerated defendants with speedy appeals. To be sure, the adoption of such a rule would sometimes benefit the guilty as well as the innocent, but that is the nature of a prophylactic rule. The exclusionary rule, for example, often benefits the guilty as well as the innocent, but we have long since decided we are willing to pay that social cost in order to promote compliance with the Fourth Amendment. Similarly, a rule that convictions would be reversed when appellate delay is extreme would promote speedy appeals. Indeed, such a prophylactic rule may be the only effective way to guard against the injustice of subjecting innocent persons to prolonged prison time while they wait for their convictions to be reversed on appeal.

I do not propose, however, that we adopt such a rule at this time and use it as a basis for reversing Tucker's conviction. The fact that his meritless appeal took six years to process and decide does not, standing alone, justify the invocation of our supervisory power to adopt a rule that would promote speedy appeals. We simply have no reason to believe that excessive appellate delay is a significant enough problem in our circuit to justify adoption of such a rule at this time.

I believe we can and should dispose of Tucker's appeal without addressing the broad question whether *Hasting* is controlling authority in cases of excessive appellate delay. For prudential reasons, we should simply affirm Tucker's conviction on the merits without discussing the nature and extent of our authority to promote speedy appeals. In holding that *Hasting*'s rule of trial-related prejudice governs cases of appellate delay, the majority unnecessarily eviscerates that authority. While there may be room for disagreement about the existence and scope of the federal judiciary's supervisory power,[3] it is settled law that such power has been entrusted to us.[4] While that authority should always be used sparingly, we should not lightly cabin our discretion to use it if the need arises.

---

3. *See, e.g., United States v. Rubio-Villareal,* 967 F.2d 294, 301 (9th Cir.1992) (Wallace, J., concurring) (stating that he was "unable to discover any basis for 'supervisory power,' and therefore question[ed] its validity.").

4. *See, e.g., McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943) ("Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence.").