11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Michael Antonio
Jenkins  

Appellant

Vs.                   No. 11-00-00343-CR B Appeal from Dallas County

State of Texas

Appellee

 

Appellant
pleaded guilty to the third degree felony offense of unlawful possession of
cocaine.  The trial court convicted
appellant and assessed his punishment at seven years and one month confinement
and a fine of $500. We affirm.

Appellant
presents three points of error. 
Appellant asserts:  (1) that the
delay in completing the appellate record deprived him of his due process
rights; (2) that he was denied his right to effective assistance of counsel on
appeal due to his retained counsel=s delay  in securing the
appellate record; and (3) that the trial court erred in denying his motion to
suppress evidence.  

We first
address appellant=s
complaint that the trial court abused its discretion in denying appellant=s motion to suppress.  The trial court denied appellant=s motion based on a finding that appellant=s girlfriend, Monica Walters, consented to
the search of the apartment that led to the discovery of the cocaine and
appellant=s subsequent arrest.  Appellant argues that Walters did not
voluntarily consent to the search and, therefore, that the search was
illegal.    








The trial
court is the finder of fact at a motion to suppress hearing and may choose to
believe any or all of the witnesses= testimony.  Johnson v. State,
803 S.W.2d 272, 287 (Tex.Cr.App.1990), cert. den=d, 501 U.S. 1259 (1991).  In
reviewing a trial court=s ruling on a motion to suppress, appellate courts must give great
deference to the trial court=s findings of historical facts as long as the record supports the findings.
Guzman v. State, 955 S.W.2d 85 (Tex.Cr.App.1997).  We must afford the same amount of deference
to the trial court=s
rulings on Amixed questions of law and fact,@ such as the issue of probable cause, if the
resolution of those ultimate questions turns on an evaluation of credibility
and demeanor.  Guzman v. State,
supra at 89.  Appellate courts, however,
review de novo Amixed questions of law and fact@ not falling within the previous category. Guzman
v. State, supra.  When faced with a
mixed question of law and fact, the critical question under Guzman is
whether the ruling Aturns@ on an evaluation of credibility and
demeanor.  Loserth v. State, 963
S.W.2d 770, 773 (Tex.Cr.App.1998).   A
question Aturns@ on an evaluation of credibility and demeanor when the testimony of one
or more witnesses, if believed, is always enough to add up to what is needed to
decide the substantive issue.  Loserth
v. State, supra. We must view the record in the light most favorable to the
trial court’s ruling and sustain the trial court’s ruling if it is reasonably
correct on any theory of law applicable to the case.  Guzman v. State, supra.

To be
valid, a consent to search must be positive and unequivocal and must not be the
product of duress or coercion, either express or implied.  Schneckloth v. Bustamonte, 412 U.S.
218 (1973).  The State bears the burden
of proving voluntary consent by clear and convincing evidence.  State v. Ibarra, 953 S.W.2d 242, 245
(Tex.Cr.App.1997).

The trial
court heard appellant=s
motion to suppress on April 20, 2000. 
Officer A. M. Stokes of the Garland Police Department testified that, on
June 25, 1999, at about 12:55 p.m., he responded to a family disturbance call
at 4238 Duck Creek, Apartment No. 108. 
Officer Singleton arrived as backup at about the same time.  Officer Stokes and Officer Singleton went to
the front door of the apartment. 
Officer Stokes knocked on the door, and a boy answered.  Officer Stokes asked the boy where his
parents were, and the boy said that they were upstairs fighting.  Officer Stokes testified that, when the boy
opened the door, he could hear a male and a female screaming at each other from
inside the apartment.  Officer Stokes
and Officer Singleton entered the apartment hoping to prevent any violence from
occurring.  They followed the sound of
the screaming upstairs to the master bedroom. 
Officer Stokes testified that appellant was standing in the master
bedroom and that Walters was standing in the hallway, about 10 feet away from
appellant.  Appellant and Walters were
still screaming at each other when the officers got upstairs, and the officers
had to calm them down. Officer Stokes testified that, once he and Officer
Singleton got into the master bedroom, they could smell marihuana.  The officers saw a tray containing marihuana
stems and residue in the master bedroom.








Officer
Stokes testified that Walters told him that appellant had assaulted her and
threatened her.  Officer Stokes said
that there was enough evidence to charge appellant with Class C assault and
possession of marihuana.

Officer
Dave Weand arrived as additional backup. 
Officer Weand testified that, when he arrived at the scene, the other
officers were upstairs.  Officer Weand
said that he smelled marihuana as soon as he walked upstairs into the
hallway.  Officer Stokes pointed out the
tray with the marihuana stems on it. 
Officer Weand testified that he spoke with Walters in the hallway.  The lease for the apartment was in Walters=s name. 
Officer Weand got a consent-to-search form covering the apartment,
filled in the blanks on the form, and presented it to Walters for
signature.  Walters signed the consent
to search.  The consent to search was
admitted as evidence and provided:  AI have given this consent of my own free will
and accord and without being subject to any threats, promises, compulsion, or
persuasion of any kind.@

Officer
Stokes testified that the officers found narcotics in a little metal tin on top
of an entertainment center in the master bedroom. 

Walters
testified that the lease to the apartment was in her name.  She lived in the apartment with appellant
and her three children.  Walters said
that her 14-year-old daughter called the police because Walters and appellant
were arguing.  When the police arrived,
Walters=s 10-year-old son answered the door.  Walters testified that she and appellant had
just finished smoking a blunt of marihuana and that the apartment smelled of
marihuana.  Walters said that she told
the officers that appellant had threatened her.

Walters testified
that she signed the consent to search because the officers told her that she
would go to jail if she did not sign it. 
Officer Weand testified that he did not threaten to take Walters to jail
if she did not sign the consent to search. 
Officer Stokes testified that Walters was not threatened that, if she
did not sign the form, she would go to jail. 
Officer Stokes said that Officer Weand explained to Walters the problems
that she would have being on Asection eight@
housing and having narcotics in the apartment.








Appellant
relies on Walters=s
testimony to support his argument that the officers coerced Walters into
signing the consent to search by telling her that she would go to jail if she
did not sign it.  However, the consent
to search provides that Walters gave her consent of her “own free will and
accord and without being subject to any threats, promises, compulsion, or
persuasion of any kind”; and Officer Stokes and Officer Weand both contradicted
Walters’s testimony.  As the finder of
fact, the trial court was the sole judge of the credibility of the witnesses
and was free to disbelieve Walters’s testimony.  Johnson v. State, supra at 287.  Based on the evidence, the trial court did not abuse its
discretion in finding that Walters voluntarily consented to the search.  Appellant’s third point of error is
overruled.

In his
first point of error, appellant complains of the delay of over two years in
completing the appellate record. 
TEX.R.APP.P. 35.2 governs the filing of the appellate record in criminal
cases.  Rule 35.2(b) applies to cases in
which a timely motion for new trial has been filed and denied.  Rule 35.2(b) provides that the appellate
record must be filed within 120 days after the sentence is imposed or suspended
in open court.  The trial court imposed
the sentence on August 25, 2000. 
Appellant filed a timely motion for new trial which the trial court
denied.   Thus, the appellate record was
due to be filed within 120 days after August 25, 2000.  However, the court reporter=s record from the hearing on appellant=s motion to suppress was not filed until
February 19, 2003, more than two years after the deadline.       








The courts
have held that a substantial delay in processing an appeal may constitute a
denial of due process under U.S. CONST. amend XIV.  Colunga v. State, 527 S.W.2d 285, 288 (Tex.Cr.App.1975); Reese
v. State, 481 S.W.2d 841, 842-43 (Tex.Cr.App.1972).  In determining whether a delay in processing
a defendant=s appeal constitutes a denial of due process,
the courts consider four factors:  (1)
the length of the delay, (2) the reason or justification for the delay, (3)
whether and to what extent the defendant demanded a more rapid appeal, and (4)
any prejudice resulting to the defendant by the delay (such as post-trial
confinement, worry, and the desire to limit the possibility that the defendant=s appeal will be impaired).  Sparkman v. State, 634 S.W.2d 82, 84
(Tex.App. B Tyler 1982, no writ)(citing Rheuark v.
Shaw, 477 F. Supp. 897, 908-09 (N. D. Tex. 1979), aff=d in part and rev=d in part, 628 F.2d 297 (5th  Cir.
1980), cert. den=d, 450 U.S. 931
(1981)).  The Aprejudice@ inquiry is the most important factor because Aa due process violation cannot be established
absent a showing of prejudice to the appellant.@  United States v. Antoine,
906 F.2d 1379, 1382 (9th Cir.), cert. den=d, 498 U.S. 963 (1990).  In
evaluating the  Aprejudice@ factor, courts focus on three types of potential prejudice from
appellate delay:  (1) oppressive
incarceration pending appeal, (2) anxiety and concern of the convicted party
awaiting the outcome of the appeal, and (3) impairment of the convicted person=s grounds for appeal or of the viability of
his defense in case of retrial.  United
States v. Bermea, 30 F.3d 1539, 1569 (5th Cir. 1994)(citing United
States v. Tucker, 8 F.3d 673, 676 (9th Cir. 1993)(en banc), cert. den=d, 510 U.S. 1182 (1994) and Rheuark v. Shaw, 628 F.2d at 303).

In this
case, the length of the delay in filing the reporter=s record exceeded two years, and the record
does not demonstrate any justification or reason for the delay.  However, the record also does not
demonstrate that appellant demanded a more rapid appeal.  

As to the
first type of potential prejudice, if a defendant=s conviction was proper, Athere has been no oppressive confinement; he has merely been serving
his sentence as mandated by law.@ United States v. Tucker, supra at 676 (citing United States
v. Antoine, supra at 1382).  In this
case, we have held that the trial court did not err in denying appellant=s motion to suppress.  Thus, appellant=s conviction was proper, and his
incarceration was not oppressive.  As to
the second type of prejudice, appellant has experienced anxiety and concern
during this appeal, but he has not demonstrated that it was to such a degree as
Awould distinguish his case from that of any
other prisoner awaiting the outcome of an appeal.@  United States v. Tucker,
supra at 676 (quoting United States v. Antoine, supra at 1383).  As to the third type of prejudice, the delay
did not impair the ground for his appeal. 
The reporter=s
record is a complete record of the hearing on appellant=s motion to suppress.  The record enabled appellant to fully
present his ground for appeal.  Had the
record been filed two years earlier, appellant still would not have succeeded
on his appeal.  Appellant has not been
prejudiced by the delay in the filing of the record.  We cannot say that the delay constituted a denial of due
process.  See Colunga v. State,
supra.  Appellant=s first point of error is overruled.








In his
second point of error, appellant asserts that he was denied his right to
effective assistance of counsel on appeal due to his retained counsel=s delay in securing the appellate
record.  Appellant=s retained counsel represented him at the
hearing on the motion to suppress and filed the notice of appeal.  Appellant=s retained counsel was appellant=s attorney of record on appeal until the trial court declared appellant
indigent and appointed new counsel for appellant on September 7, 2001.  

            A
defendant is entitled to receive effective assistance of counsel on
appeal.  See Ex parte Coy, 909
S.W.2d 927, 928 (Tex.Cr.App.1995); Ex parte Dietzman, 790 S.W.2d 305,
306-07 (Tex.Cr.App.1990).  If a
defendant demonstrates that he was denied reasonably effective assistance of
counsel on appeal, the defendant is entitled to habeas corpus relief in the
form of a new appeal or an out-of-time appeal. 
Ex parte Coy, supra at 928; Ex parte Dietzman, supra at
306-07.  The purpose of the remedy is to
provide the defendant an opportunity for meaningful appellate review.  Ex parte Coy, supra.  In this case, the conduct of appellant=s retained counsel did not prevent a
meaningful appellate review of appellant=s claims.  The appellate record
is now complete, and appellant has received a meaningful appellate review in
this appeal.  Appellant=s second point of error is overruled.         

The
judgment of the trial court is affirmed.

  

JIM
R. WRIGHT

JUSTICE

 

August 29, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.