Nicholas **KARABIN**, Jr., Appellant

v.

George **PETSOCK** and Leroy **Zimmerman**, Attorney General of the State of Pennsylvania.

No. 84–5444.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 29, 1985.

Decided April 9, 1985.

Rehearing Denied May 3, 1985.

Todd J. O'Malley, George V. Lynette, Scranton, Pa., for appellant.

Ernest D. Preate, Jr., Dist. Atty., Lackawanna County, Scranton, Pa., for appellees.

Before ALDISERT, Chief Judge, SLOVITER, Circuit Judge, and STAPLETON, District Judge *.

* Hon. Walter K. Stapleton, Chief Judge of the United States District Court for the District of

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

Nicholas Karabin, Jr. was convicted by a jury in the Court of Common Pleas of Dauphin County, Pennsylvania, of first-degree murder and reckless endangerment of the murder victim's wife stemming from a March 17, 1978 shooting. A sentence of life imprisonment was imposed for the murder and a consecutive sentence of one to two years was imposed for reckless endangerment.

New counsel was appointed for the direct appeal and fourteen assignments of error were advanced to the Supreme Court of Pennsylvania which affirmed the conviction. Thereafter, Karabin filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania, alleging that his two trial counsel were ineffective. The district court found that six of the seven grounds for relief were without merit but ordered an evidentiary hearing before a magistrate on the remaining ground: whether trial counsel were ineffective for failing to request stenographic recording of the opening and closing statements and side bar conferences. The district court adopted the magistrate's recommendation and denied the writ. We issued a certificate of probable cause to appeal and now affirm.

Karabin, a high school teacher and owner of a detective and security business, had marital difficulties during 1977–78, causing temporary separations from his wife and ultimately leading his wife to file for divorce in February 1978. During the separations, Karabin occasionally lived with Leith Howell, one of his students. She testified at trial as follows: On January 6, 1978 Karabin told her that he was having problems with his wife and that he wanted to kill her; that he planned to go out and kill a few people at random and then shoot his wife so that he would not be considered a suspect; that in mid-February, when his wife began divorce proceedings, Karabin

Delaware, sitting by designation.

again became upset and repeated his statement that he intended to kill his wife in such a way that it would appear to be a random slaying by a madman on the loose.

On March 17, 1978, Karabin told Howell that he was going to start the random slayings that night. After driving around on patrol in connection with his detective business, Karabin stopped his car about two blocks from the highway and told Howell that he parked there so that no one would see the car when he shot someone from the highway. Karabin wore a raincoat, hat, glasses and mustache as a disguise and had a shotgun in the back seat of the car. While Howell remained in the car, she heard two shotgun blasts. When Karabin returned to the car, he said that he had just shot someone and turned on the police scanner on which they heard a report of the shooting while they drove home.

On April 6, 1978, after another patrol related to the security business, Howell again waited in the car while Karabin shot someone a few blocks away. When Karabin returned to the car he said that he had shot a drunk near the post office, that he ran into someone he knew on the way back to the car, and that he had denied hearing a shot when asked by the person he had encountered. App. at 53a–75a. The person who was shot survived and both he and the person who had seen Karabin that night testified against him.

Karabin testified in his own defense and attributed Howell's testimony against him to her jealousy about another woman Karabin was seeing during the time he lived with her, claiming that her testimony was in retaliation for his refusal to marry her. He denied having any involvement in the shootings. The jury returned a verdict of guilty in the March 17 incident, the only charges in that indictment. On direct appeal, the Pennsylvania Supreme Court rejected, without discussion, Karabin's argument that trial counsel were ineffective for not requesting that openings, closings, and side bar conferences be recorded. *Commonwealth v. Karabin*, 493 Pa. 249, 253–54 n. 1, 426 A.2d 91, 93–94 n. 1 (1981).

At the time of Karabin's trial, Pennsylvania law required the court stenographer to record:

> stenographic notes of the testimony in all judicial proceedings in any trial of fact, at law or in equity, together with the judge's charge, and of any and every ruling, order, or remark of the trial judge, or judges, relating to the case on trial, made in the presence of the jury, in any stage of the proceedings, to which ruling, order or remark either party may except in the same manner and with the same effect as is now practiced in relation to the judge's charge; and upon any trial without a jury, shall likewise report the proceedings, including the testimony of all witnesses examined and matters offered in evidence, and the rulings of the court upon the admission or rejection thereof, and the findings of the court. . . .

Pa.Stat.Ann. tit. 17 § 1804 (Purdon 1962) (repealed). The statute did not require transcribing of opening and closing statements nor of side bar conferences. In addition, as we found in *Oliver v. Zimmerman,* 720 F.2d 766, 768 (3d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984), "[t]he general trial practice in Pennsylvania is that only testimony of witnesses and statements of the court are transcribed as of course. Opening and closing speeches are not transcribed unless requested by counsel, but any objection lodged during the course of such speeches is transcribed together with the judge's ruling thereon."

At the evidentiary hearing with respect to ineffectiveness of counsel conducted by the magistrate in this case, five trial attorneys testified for the prosecution, including the Chief of the Trial and Appeals Section of the Dauphin County District Attorney's Office, a defense attorney with more than 30 years of experience who was Chairman of the Pennsylvania Bar Association's Criminal Law Committee, the District Attorney of Lehigh County, and both trial counsel in this case. All five stated that it was their experience and generally accept-

ed practice not to record the openings and closings. The two attorneys who testified for the defense stated that it was their practice to request that the opening and closing statements be recorded, but they did not contradict the prosecution's witnesses' testimony that this was not generally done. Thus, the magistrate concluded that counsels' failure to request recordation would not fall below the normal level of competence for defense attorneys. Moreover, the adoption of Pa.R.Crim.P. 9030 in 1981 providing that "proceedings in open court shall be recorded" suggests that the Pennsylvania Criminal Rules Committee had effected a change by insuring that remarks of counsel were recorded, in addition to the testimony of witnesses and statements of the judge.

■ Since it was customary practice not to request recording of openings and closings at the time of Karabin's trial, his attorney cannot be found to have been ineffective for conforming to that standard. In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-pronged test for determining when counsel is ineffective. This requires a defendant to show that the attorney's performance was not reasonable under prevailing professional norms, *id.,* 104 S.Ct. at 2065, and that the conduct was prejudicial to the defense. *Id.* at 2067. Karabin has clearly failed to show that his trial attorneys' conduct was unreasonable. Thus, he cannot prove ineffectiveness, which requires proving both elements of the Supreme Court's test.

■ Nevertheless, Karabin argues that he is entitled to a new trial because, in the absence of a complete transcript or substantial equivalent, his appellate counsel cannot provide effective assistance. Due process requires that criminal defendants receive effective assistance of appellate counsel when states provide for direct appeal as of right. *Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). We find no due process violation in this case.

Karabin concedes that no objections were made during the unrecorded portions of the trial, admitting that had any objections been made, they would have been put on the record. The failure to object would constitute a waiver of Karabin's right to assert any legal error unless it was of such a magnitude as to constitute plain error. While we recognize that the Supreme Court has said that "[t]he right to notice 'plain errors or defects' is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended," *Hardy v. United States,* 375 U.S. 277, 280, 84 S.Ct. 424, 427, 11 L.Ed.2d 331 (1964), the language appears in a case in which, unlike this case, there was a complete absence of any transcript. We also note that the Court emphasized that its decision was based on federal statutory, not constitutional, grounds. *Id.* at 282, 84 S.Ct. at 428. The Supreme Court has never held that due process requires a verbatim transcript of the entire proceedings. To the contrary, it has specifically held that states may find "other means of affording adequate and effective appellate review" of criminal convictions. *Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). Defendant's trial counsel and the prosecution successfully reconstructed the unrecorded side bar conferences, and appellant neither suggests that that reconstruction is inadequate nor that there was any error committed during those conferences.

■ Although trial counsel testified at the hearing that they cannot now recreate the openings and closings, both testified that they recalled nothing that would have constituted a violation of Karabin's right to a fair trial. A criminal defendant must first show a "colorable need" for a complete transcript before the state must meet its burden of showing that something less will suffice. *Mayer v. City of Chicago,* 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971). Karabin has not shown that trial counsel were unavailable to appellate counsel when and if needed. We also note that the trial judge complimented both attorneys for their excellent closings, a state-

ment that was recorded on the record. Karabin has not even suggested what error might have occurred at the prosecution's closing. In the face of this record, we conclude that Karabin has not shown a "colorable need" for the opening and closing statements, and hence we reject his contention of a due process violation.

Accordingly, we will affirm the decision of the district court.