

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-1995

# Simmons v Beyer

Precedential or Non-Precedential:

Docket 92-5370

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Simmons v Beyer" (1995). *1995 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 92-5370


LAWRENCE L. SIMMONS,
                              Appellant

V.

HOWARD L. BEYER; and THE ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY, W. CARY EDWARDS


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 86-04274)


Argued October 7, 1993

Before:  HUTCHINSON, COWEN and NYGAARD, <u>Circuit Judges</u>

(Opinion Filed    January 4, l995 )


JOHN V. SAYKANIC, ESQUIRE (Argued)
35 Onyx Court
Passaic, NJ 07055
Attorney for Appellant

RONALD S. FAVA, ESQUIRE
Passaic County Prosecutor
JANE E. HENDRY, ESQUIRE (Argued)
Office of County Prosecutor
77 Hamilton Street
New Court House
Paterson, NJ 07505
Attorney for Appellees

NYGAARD, Circuit Judge.

We granted Lawrence L. Simmons' request for a certificate of probable cause and now must decide: (1) whether voir dire transcripts, missing after a 13-year delay between Simmons' sentencing and direct appeal, are indispensable to review his claim that the prosecution improperly exercised its peremptory challenges to exclude African Americans from the jury, and (2) whether this delay violated Simmons' constitutional right to due process and a speedy appeal.[1]  The district court denied Simmons' reopened petition for a writ of habeas corpus.  We will reverse because, although the district court correctly concluded that Simmons' right to due process was violated, it erred by concluding that the violation was cured when Simmons received his direct appeal.

I.

In 1977, Simmons was sentenced to life imprisonment plus 21 to 25 years.  Although immediately after sentencing he expressed his desire to appeal, and never waived his right to appeal, Simmons' conviction and sentence were not reviewed for 13 years.  His appointed trial counsel did not file a notice of appeal or promptly transfer Simmons' case to the appellate

---

[1].  Simmons additionally asserts claims based on alleged violations of his Miranda and Fifth Amendment rights, inability to review the effect of pre-trial publicity, governmental misconduct, verdicts against the weight of the evidence, errors in the jury instructions, other errors during trial, and the denial of his motions to examine the jurors and for a new trial. We have reviewed these claims and conclude that they are without merit.

division of the New Jersey Public Defender.  Thereafter, despite requests from Simmons and his trial counsel, the Public Defender failed to promptly seek an appeal.  Ultimately, the federal district court granted Simmons a conditional writ of habeas corpus, directing that a writ would issue unless the state gave him an appeal or a new trial.  Thus, after he had pursued collateral review in the state and federal courts from 1980 to 1988, the New Jersey Superior Court, Appellate Division finally permitted Simmons to file a notice of appeal nunc pro tunc.  After spending more than a decade in prison, Simmons was granted his first appeal as of right.

By this time, however, portions of the trial record including a lengthy in camera voir dire of prospective jurors were missing.  The Appellate Division remanded the case for the limited purpose of reconstructing the record, and the judges who had presided over the jury selection and the remainder of the trial and sentencing held reconstruction hearings.  Simmons challenged the sufficiency of the reconstructed record in federal district court, but his motion was denied without prejudice to his right to challenge the record in the state appellate proceedings.  In 1990, the Appellate Division affirmed Simmons' conviction and sentence, and the New Jersey Supreme Court denied his petition for certification.  In 1991, the United States Supreme Court denied Simmons' petition for a writ of certiorari. The district court then denied his reopened petition for a writ of habeas corpus, and he now appeals.

II.

Simmons contends that the manner in which the prosecutor exercised his peremptory challenges violated the federal and state law principles articulated in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), and State v. Gilmore, 511 A.2d 1150 (N.J. 1986).  In Batson, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment forbids the prosecution from exercising peremptory challenges to exclude potential petit jurors based on race or race-based assumptions.  476 U.S. at 89, 106 S. Ct. at 1719.  Similarly, in Gilmore, the New Jersey Supreme Court held that its state constitution prohibits the prosecution's use of peremptory challenges "to remove potential petit jurors who are members of a cognizable group on the basis of their presumed group bias."  511 A.2d at 1154.  Before analyzing the merits of Simmons' peremptory challenge claim, we must resolve two preliminary issues:  (1) whether Batson and Gilmore apply to this case, and (2) whether Simmons' claim is barred under the "adequate and independent state ground" doctrine.[2]

A.

In Allen v. Hardy, 478 U.S. 255, 106 S. Ct. 2878 (1986) (per curiam), the Court concluded that Batson does not apply retroactively on collateral review of a final conviction.  Id. at 258, 106 S. Ct. at 2879.  In Griffith v. Kentucky, 479 U.S. 314,

_____

[2].  The parties do not dispute and our review reveals that Simmons properly exhausted his peremptory challenge claim, and speedy appeal claim, in the state courts.  See Rose v. Lundy, 455 U.S. 509, 518-20, 102 S. Ct. 1198, 1203-04 (1982).

107 S. Ct. 708 (1987), however, the Court held that Batson does apply "to litigation pending on direct state or federal review or not yet final when Batson was decided." Id. at 316, 107 S. Ct. at 709. It reasoned that the integrity of judicial review requires consistent application of "our best understanding of governing constitutional principles," id. at 323, 107 S. Ct. at 713 (quoting Mackey v. United States, 401 U.S. 667, 679, 91 S. Ct. 1160, 1173 (1971)), and fairness requires allegiance to "the principle of treating similarly situated defendants the same." Id.

Here, Simmons' 1977 conviction did not become final until 1991 when the United States Supreme Court denied his petition for a writ of certiorari. See Allen, 478 U.S. at 258 n.1, 106 S. Ct. at 2880 n.1 (citation omitted). Although this case was before the Supreme Court in 1982, in conjunction with Simmons' efforts to get a direct appeal, it did not then become final in the relevant sense. Simmons' first appeal as of right was the critical missing step, and his intervening applications for collateral review did not render his conviction final. See Caspari v. Bohlen, ___ U.S. ___, ___, 114 S. Ct. 948, 953 (1994). Accordingly, the Batson decision, announced in 1986, applies to this case.

The irony is that the egregious delay in granting Simmons a direct appeal inadvertently gave him the benefit of the Batson decision. Had Simmons received a timely review, his conviction would have been final before 1986. In a sense, he is a "chance beneficiary" of the Batson rule. See Griffith, 479

U.S. at 323, 107 S. Ct. at 713. Simmons, however, was not similarly situated with other defendants convicted in 1977 whose convictions became final before Batson was decided. Those other defendants did not suffer a 13-year delay before getting appellate review, and we see no reason to bend the rule in Griffith to deny Simmons the constitutional protection afforded in Batson.

B.

The Gilmore court itself delineated its holding's rule of application:

> [T]he new rule will apply to this defendant, trials in which the jury selection commenced on or after the date of the Appellate Division opinion [which was affirmed in Gilmore], and cases now on appeal in which the issue was preserved in the trial court and the record is adequate to raise the issue.

511 A.2d at 1169. Applying these instructions, the Appellate Division rejected Simmons' contention that the reconstructed trial record was insufficient to permit it to review his Gilmore claim. It held that Simmons' argument "must of necessity fail because we consider this to be attempting a retroactive application of Gilmore under the procedural history and circumstances of this case."[3] The Appellate Division's opinion

---

[3]. The Appellate Division noted in passing that Simmons had filed no objections to the reconstructed record in the state trial court. Before the reconstruction hearings, however, the district court expressly granted Simmons permission to seek its ruling on the adequacy question. Simmons, in fact, challenged the sufficiency of the record in the district court, but his motion was denied "without prejudice to petitioner's right to raise these issues in the state appellate proceedings and in any future federal habeas corpus petition following exhaustion of state remedies." We will not presume a procedural default or

yields three potential justifications for this conclusion: (1) since Simmons' direct appeal followed his applications for collateral review, it was not legitimately "on appeal" for purposes of applying Gilmore retroactively, (2) the Gilmore issue was not sufficiently "preserved in the trial court," and (3) the reconstructed record was not "adequate to raise the issue," and the resulting prejudice was appropriately assigned to Simmons.

Although its specific rationale was not plainly stated, the Appellate Division clearly rendered a decision based on state law grounds which was later affirmed by the state supreme court. Simmons had also raised a Batson claim in his direct appeal, stating in his brief that "the rule of Batson is applicable to the case at bar," but the Appellate Division did not address the Batson issue. It relied solely on state law authority and based its decision to reject Simmons' peremptory challenge claim on Gilmore. "[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts," Wainwright v. Sykes, 433 U.S. 72, 81, 97 S. Ct. 2497, 2503 (1977) (citations omitted), and we lack jurisdiction to overrule the Appellate Division's conclusion that Gilmore does not apply retroactively to Simmons' case. See Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S. Ct. 183, 184 (1935) ("where the judgment of a state court rests upon two grounds, one of which is federal

(..continued)
waiver because Simmons apparently relied on the district court's assurances.

and the other nonfederal in character, our jurisdiction fails if the nonfederal ground is independent of the federal ground and adequate to support the judgment").

C.

Next, we consider whether the Appellate Division's dismissal of Simmons' Gilmore claim bars consideration of his Batson claim under the "adequate and independent state ground" doctrine. Although Simmons raised a Batson claim in his reopened petition for a writ of habeas corpus, the district court only analyzed the Appellate Division's dismissal under Gilmore. Simmons v. Arvonio, 796 F. Supp. 777, 790 (D.N.J. 1992). The district court concluded that this dismissal was not reviewable because it was based on substantive state law and disposed of Simmons' peremptory challenge claim. Id. (citing Sykes, 433 U.S. at 81, 97 S. Ct. at 2503). For the following reasons, we conclude that the district court erred.

In Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991), the Court reiterated that it "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Id. at 729, 111 S. Ct. at 2553-54. Here, the Appellate Division's judgment on Simmons' state Gilmore claim was clearly "independent" of his federal Batson claim. The court cited no federal case law and did not refer to the Fourteenth Amendment or Batson decision in concluding that Gilmore did not apply retroactively to Simmons' case. Moreover, the Gilmore court

explicitly based its decision "on the New Jersey Constitution, which protects fundamental rights independently of the United States Constitution." 511 A.2d at 1157.[4] The Appellate Division's decision under Gilmore, however, was not "adequate" to support its judgment. The unavailability of a state constitutional claim is not dispositive as to the availability or merits of an analogous federal constitutional claim:

> [T]he federal habeas petitioner who claims he is detained pursuant to a final judgment of a state court in violation of the United States Constitution is entitled to have the federal habeas court make its own independent determination of this federal claim without being bound by the determination on the merits of that claim reached in the state proceedings.

Sykes, 433 U.S. at 87, 97 S. Ct. at 2506-07.

If the Appellate Division had explicitly addressed and dismissed Simmons' Batson claim based on its analysis of federal law, then this claim would clearly be subject to federal habeas

---

[4]. Although the protections afforded under Batson and Gilmore are overlapping, the two cases rest on different foundations. See Pemberthy v. Beyer, 19 F.3d 857, 859 (3d Cir. 1994) (recognizing dual protection of New Jersey and federal constitutions); State v. Bey, 610 A.2d 814, 827 (N.J. 1992) (same).

review. For example, if it had dismissed both the Gilmore and Batson claims on state and federal retroactivity grounds, then its judgment regarding the retroactive application of Batson would be subject to review. Conversely, if the Appellate Division had ruled that Simmons waived his Batson claim based on state procedural law, then its

judgment would be immune from federal review. But, dismissing a state constitutional claim on state law grounds does not preclude federal habeas review of a parallel federal constitutional claim.

### III.

### A.

The first issue is whether Simmons' <u>Batson</u> claim is preserved for review.  During the reconstruction hearings, Simmons' trial counsel testified as follows:

Q:   Do you recall making a motion for mistrial on the basis that the State was improperly excluding blacks on the basis of race?

A:   Again, I cannot say with certainty that I made such a motion.  I don't have an independent recollection of it.  I probably would have given the flavor and the context of this case, et cetera, that I would have made such a motion.  Although, I cannot say that I -- I can't say, categorically, that I did.  I probably did, but I can't say that.

In response to a question about the timing of the motion, he stated that: "I don't have an independent recollection, but I would think that I definitely made it before the jury was sworn. I would not make it after the fact." Finally, counsel attested that: "At that time I was making the motion, not in every case, but I recall making a motion for a systematic exclusion by the State in several other cases during that period of time."

The assistant prosecutor's testimony is not to the contrary. He testified as follows:

Q: Do you recall the defense making a motion for a mistrial charging that the State systematically excluded black jurors?

A: No. I believe that that happened, after reviewing notes that Judge Marchese made, but without having reviewed those notes, I would have no recollection of that occurring.

Although the notes of the judge who presided over the voir dire, Judge Leopizzi, do not refer to a defense motion based on systematic exclusion, the file of the judge who presided over the trial and sentencing, Judge Marchese, includes the following notation: "Defense motion for mistrial charging State with systematically excluding blacks from jury. Leopizzi denied." The court clerk's records indicate that defense counsel made several motions for a mistrial before the jury was sworn, although they do not specify the grounds for these motions. Based on this record, we are satisfied that Simmons' Batson claim was preserved for appeal.

B.

Having asserted a claim that the prosecution based its peremptory challenges on race, Simmons had the burden of establishing a prima facie case.  A _Batson_ analysis proceeds in three steps:  (1) the defendant must make a prima facie showing of a violation, (2) if the defendant succeeds, the prosecution must articulate a race-neutral explanation, and (3) the trial court must then determine whether the defendant has proven purposeful discrimination.  See _United States v. Uwaezhoke_, 995 F.2d 388, 392 (3d Cir. 1993) (quoting _Hernandez v. New York_, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1865-66 (1991)), _cert. denied_, ___ U.S. ___, 114 S. Ct. 920 (1994).  In _United States v. Clemons_, 843 F.2d 741 (3d Cir.), _cert. denied_, 488 U.S. 835, 109 S. Ct. 97 (1988), we elaborated on the first step of a _Batson_ analysis, listing five factors that are relevant to a prima facie case:  (1) the number of racial group members in the panel, (2) the nature of the crime, (3) the race of the defendant and the victim, (4) a pattern of strikes against racial group members, and (5) the prosecution's questions and statements during the voir dire.  _Id._ at 748.

By the time of the reconstruction hearings, eleven years after Simmons' trial, defense counsel did not recall how many African Americans were in the venire, how many were struck by the prosecution, or how many were seated as jurors.  The transcript from a pre-trial hearing held the day after the jury had been selected, however, records defense counsel's estimate that 130 potential jurors had been questioned.  Additionally, trial transcripts disclose that, following an in-court

identification of Simmons, defense counsel stated: "Let the record reflect that he pointed to the defendant, Simmons. The only black male in the courtroom except for Mr. Jones, Juror number 2."

The assistant prosecutor similarly did not remember the total number of people in the venire, or its racial composition. He testified during the reconstruction hearings that "there could have been" as many as 20 African Americans, but that he did not think "there would have been" as many as 40. The assistant prosecutor recalled juror number two, the foreperson of the jury, as being an African American man, and he was "quite sure" that there were other African American venirepersons besides juror number two. He did not know how many peremptory challenges he used to strike African Americans from the jury. The court clerk's records reflect that both sides used all of their peremptory challenges: "Fourteen jurors in the box and all challenges have been exhausted."

Simmons is African American and thus a member of a cognizable racial group. Based on his motion for a mistrial "charging [the] State with systematically excluding blacks from [the] jury," we conclude that the prosecution struck at least one potential African American juror. See Clemons, 843 F.2d at 747 (striking single juror could constitute prima facie case). The fact that juror number two was African American is not dispositive. See id. ("mere presence of a single black on the jury would not necessarily prevent a finding of a prima facie case"). It appears that between 20 and 40 other African

Americans may have been in the venire, although defense counsel and the assistant prosecutor were unable to recall with certainty.

The nature of the crime and its racial configuration -- the murder and robbery of an elderly caucasian physician by a young African American man -- contribute significantly to Simmons' prima facie case. See Jones v. Ryan, 987 F.2d 960, 971 (3d Cir. 1993) (considering substantive charge, "robbery of an elderly white man by a black man," in analyzing defendant's prima facie case). Presumably recognizing the potential that the trial would become racially charged, the judge specifically questioned "jurors about the fact that the victim in this case was white, [and] the defendant was black, [] attempting to ascertain whether jurors would have any difficulty with this." See also id. at 971 n.5 (noting that the trial court had asked the venire whether the respective race of the defendant and alleged victim would affect their judgment).

Although we cannot evaluate the last two Clemons factors because transcripts of the voir dire are not available, we conclude that Simmons has established a prima facie case of a Batson violation. The combination of Simmons' race, the prosecution's exclusion of at least one potential African American juror, and the circumstances surrounding the crime are sufficient to meet Simmons' prima facie burden. Thus, our focus shifts to the prosecution and its ability to come forward with race-neutral explanations for its peremptory challenges.

C.

In *Mayer v. City of Chicago*, 404 U.S. 189, 92 S. Ct. 410 (1971), the Supreme Court reiterated that "[i]n all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds." *Id.* at 193-94, 92 S. Ct. at 414 (quoting *Draper v. Washington*, 372 U.S. 487, 496, 83 S. Ct. 774, 779 (1963)). "In terms of a trial record, this means that the State must afford the indigent a record of sufficient completeness to permit proper consideration of [his or her] claims." *Id.* at 194, 92 S. Ct. at 414 (internal quotations omitted). Although a full verbatim transcript is not automatically required, the *Mayer* Court concluded that an "appellant cannot be denied a 'record of sufficient completeness' to permit proper consideration of his claims." *Id.* at 198, 92 S. Ct. at 416; *see also* *Karabin v. Petsock*, 758 F.2d 966, 969 (3d Cir.) (holding that defendant must show "colorable need" for complete transcript), *cert. denied*, 474 U.S. 857, 106 S. Ct. 163 (1985).

The problem here is self-evident. No one recalls how many potential African American jurors were peremptorily challenged, and the assistant prosecutor does not remember and has no notes indicating why he struck individual venirepersons. Both parties agree that further reconstruction hearings would be fruitless. Simmons' *Batson* claim simply cannot be reviewed without a transcript of the voir dire to allow the reviewing court to examine whom the assistant prosecutor excluded and why. We do not and cannot know whether Simmons' jury selection process was infected by racial discrimination.

Nevertheless, Simmons raised a colorable claim that the prosecution systematically excluded African Americans from the jury, and the prejudice stemming from our inability to review this claim is not fairly borne by him.[5]  The seriousness of this claim and its potential merit demand some form of habeas relief. As explained by the Batson Court, "[t]he core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race."  476 U.S. at 97–98, 106 S. Ct. at 1723.  It would be a grinding injustice to Simmons were he to suffer at the hand of a prosecutor who practiced racial discrimination through the use of peremptory challenges and then contributed to a delay that shielded his actions from review.  The potential harm extends beyond Simmons and the excluded jurors:  "Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice."  Id. at 87, 106 S. Ct. at 1718.

IV.

Simmons contends that the 13-year delay also violated his right to due process and a speedy appeal, providing another

_____

[5].  The district court opinion granting Simmons a conditional writ of habeas corpus details defense counsel's actions and non-actions with respect to obtaining trial transcripts and the state's failure to preserve the necessary materials for preparing transcripts.  See Simmons v. Beyer, 689 F. Supp. 432, 448–49 (D.N.J. 1988).

basis for habeas relief.  It is axiomatic that once an appeal as of right has been granted, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  Evitts v. Lucey, 469 U.S. 387, 393, 105 S. Ct. 830, 834 (1985).  The constitutional touchstone is that the appellate procedure must furnish the components necessary for meaningful review.  See, e.g., Douglas v. California, 372 U.S. 353, 358, 83 S. Ct. 814, 817 (1963) (right to counsel on direct appeal); Griffin v. Illinois, 351 U.S. 12, 19-20, 76 S. Ct. 585, 590-91 (1956) (right to transcript on direct appeal).  Due process guarantees an appeal that is both "adequate and effective."  Evitts, 469 U.S. at 392-94, 105 S. Ct. at 834-35.  Since New Jersey provides for an appeal as of right, N.J. Const. Art. 6, § 5, ¶ 2, we must determine whether the 13-year delay constitutionally impaired the appellate review that Simmons eventually received.

Although the Supreme Court has not explicitly recognized a criminal defendant's right to a speedy appeal, in Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987) (Burkett I), we held that the Due Process Clause "guarantees a reasonably speedy appeal if the state has chosen to give defendants the right to [appeal]."  Id. at 1221.  Numerous other courts of appeals have also acknowledged a due process right to a speedy appeal.[6]  In Burkett I, we applied the criteria articulated in

_____

[6].  See, e.g., Harris v. Champion, 15 F.3d 1538, 1558 (10th Cir. 1994); United States v. Tucker, 8 F.3d 673, 676 (9th Cir. 1993) (en banc), cert. denied, ___ U.S. ___, 114 S. Ct. 1230 (1994); Cody v. Henderson, 936 F.2d 715, 719 (2d Cir. 1991); United

Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972), to determine whether appellate delay had violated due process. 826 F.2d at 1222; accord Harris, 15 F.3d at 1559; Tucker, 8 F.3d at 676; Johnson, 732 F.2d at 381-82; Rheuark, 628 F.2d at 303. In Barker, the Supreme Court identified four factors to balance when examining an alleged speedy trial violation: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S. Ct. at 2192. Although the interests at stake before trial and before appeal obviously differ, they are sufficiently similar to warrant the same general approach. See Moore v. Arizona, 414 U.S. 25, 27, 94 S. Ct. 188, 190 (1973) (Barker factors may carry "different weight where a defendant is incarcerated after conviction"); Cody, 936 F.2d at 719 ("Barker factors should not be applied uncritically" in speedy appeal context).

The 13-year delay in this case is an outrage, and that Simmons' appeal as of right "slipped through the cracks" is shameful. See Burkett I, 826 F.2d at 1225 (five and one-half year delay in sentencing and appeal warranted discharge); cf. Harris, 15 F.3d at 1560 (two-year appellate delay ordinarily gives rise to a presumption of inordinate delay). The subsequent

(..continued)
States v. Johnson, 732 F.2d 379, 381 (4th Cir.), cert. denied, 469 U.S. 1033, 105 S. Ct. 505 (1984); United States v. Pratt, 645 F.2d 89, 91 (1st Cir.), cert. denied, 454 U.S. 881, 102 S. Ct. 369 (1981); Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir. 1980), cert. denied, 450 U.S. 931, 101 S. Ct. 1392 (1981); cf. Allen v. Duckworth, 6 F.3d 458, 459 (7th Cir. 1993) (assuming excessive delay in appeal can violate due process), cert. denied, ___ U.S. ___, 114 S. Ct. 1106 (1994).

period of litigation marking Simmons' efforts to obtain a direct appeal apparently took on a life of its own, without regard for fundamental notions of fairness and due process.

The district court's finding that the reason for the delay was ineffective assistance by appointed trial counsel and the Public Defender is clearly correct. See Simmons, 689 F. Supp. at 443-44. We recognize that "nominal representation on appeal violates due process because 'a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.'" Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990) (quoting Evitts, 469 U.S. at 396, 105 S. Ct. at 836). Responsibility for this delay cannot be charged against Simmons, the victim of ineffective lawyers. See Harris, 15 F.3d at 1562 (delay caused by Public Defender's inability to timely perfect an appeal should not be attributed to petitioner); Coe v. Thurman, 922 F.2d 528, 531 (9th Cir. 1990) ("failures of court-appointed counsel and delays by the court are attributable to the state"). In contrast to his lawyers' performance, Simmons himself timely requested and diligently sought appellate review. See Simmons, 689 F. Supp. at 435-36 (summarizing state court findings regarding Simmons' actions).

Simmons has been undeniably prejudiced by the 13-year delay. In Burkett I, we adopted a modified version of the three interests identified in Barker, 407 U.S. at 532, 92 S. Ct. at 2193, as being relevant to prejudice in a speedy trial context.

Accordingly, we assess prejudice in light of the following

interests in promoting timely appeals:
> (1) prevention of oppressive incarceration pending
> appeal; (2) minimization of anxiety and concern of
> those convicted awaiting the outcome of their appeals;
> and (3) limitation of the possibility that a convicted
> person's grounds for appeal, and his or her defenses in
> case of reversal and retrial, might be impaired.

Burkett I, 826 F.2d at 1222 (quoting Rheuark, 628 F.2d at 303

n.8).

Here, the third factor is dispositive:  Simmons' claim

on appeal that the prosecution systematically excluded African

Americans from the jury is no longer reviewable.  This is not a

case in which deprivation of a timely appeal has engendered "the

possibility that a convicted person's grounds for appeal, and his

or her defenses in case of reversal and retrial might be

impaired."  Id. at 1225 (quoting Rheuark, 628 F.2d at 303 n.8).

Simmons has suffered actual prejudice because his Batson claim is

unreviewable on the reconstructed record.  Cf. United States v.

Wilson, 16 F.3d 1027, 1031 (9th Cir. 1994) (judicial bias claim

unreviewable because of long-delayed and woefully inadequate

trial transcript).  Moreover, an impediment to a ground for

appeal is the most serious form of prejudice "because the

inability of a defendant adequately to prepare his [or her] case

skews the fairness of the entire system."  Barker, 407 U.S. at

532, 92 S. Ct. at 2193.

Each Barker factor indicates that the 13-year appellate

delay violated Simmons' right to due process and a speedy appeal.

We agree with the district court that due process was violated,

but disagree that the violation was cured when the Appellate Division granted him the right to appeal. See Simmons, 796 F. Supp. at 791. If Simmons had received an adequate and effective, though excessively delayed appeal, then the issue of prejudice would become more difficult.[7] However, the delay in this case "substantially affect[ed] the fairness of the appellate proceeding," Cody, 936 F.2d at 722, and we conclude that the due process violation caused by the delay compels some form of habeas relief.

V.

Having concluded that Simmons is entitled to relief for both his potentially meritorious, but unreviewable, Batson claim and his speedy appeal claim, we consider what relief is appropriate. The two violations are intertwined: Simmons'

---

[7]. See Heiser v. Ryan, 15 F.3d 299, 303-04 (3d Cir. 1994) (11½-year delay in hearing motion to withdraw guilty plea did not warrant habeas relief where petitioner's ability to show coercion was not impaired), petition for cert. filed, (U.S. June 2, 1994) (No. 93-9464); Harris, 15 F.3d at 1566 (once conviction affirmed, no entitlement to habeas relief "unless the petitioner can show actual prejudice to the appeal, itself, arising from the delay"); Tucker, 8 F.3d at 676 (despite three and one half year delay, once his conviction was affirmed, petitioner received all he was due from the legal process); Allen, 6 F.3d at 460 (despite a four and one half year delay, habeas corpus action became moot once petitioner's conviction was affirmed); Muwwakkil v. Hoke, 968 F.2d 284, 285 (2d Cir.) (13-year delay prior to direct appeal does not warrant habeas relief where conviction was ultimately affirmed because there was no actual prejudice), cert. denied, ___ U.S. ___, 113 S. Ct. 664 (1992); Johnson, 732 F.2d at 382-83 (once appeal was heard and found lacking in merit, there was no basis for ordering defendant's release). But cf. Doggett v. United States, ___ U.S. ___, ___, 112 S. Ct. 2686, 2693 (1992) ("Thus we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.").

Batson claim eludes review because the delay in his direct appeal resulted in the loss or destruction of the voir dire transcripts, and his speedy appeal claim satisfies the prejudice requirement because the delay impaired appellate review of his Batson claim.

In Heiser v. Ryan, 15 F.3d 299 (3d Cir. 1994) cert. denied, Heiser v. Stepenik, 115 S. Ct. 313 (1994), we asserted that: "One of the most troublesome issues that faces a federal court sitting on a state prisoner's petition for habeas corpus is the appropriate remedy to fashion when the state proceedings have been characterized by excessive and indefensible delay." Id. at 300. Our task is "to fashion relief designed to rectify the prejudice of the violation." Burkett v. Fulcomer, 951 F.2d 1431, 1447 (3d Cir. 1991), cert. denied, ___ U.S. ___, 112 S. Ct. 3055 (1992).

The usual remedy for a Batson violation is to grant a petition for habeas corpus, but allow the state an opportunity to retry the petitioner before a properly selected jury. See Jones, 987 F.2d at 975 (remanding for district court "to grant the writ without prejudice to the Commonwealth retrying the case"); Harrison v. Ryan, 909 F.2d 84, 88 (3d Cir.) (affirming order "granting the petitioner's writ of habeas corpus and requiring the Commonwealth to either retry the petitioner within 90 days or release him"), cert. denied, 498 U.S. 1003, 111 S. Ct. 568 (1990). Although Simmons has raised a hybrid Batson claim, which draws on equal protection and due process concepts and is based on our inability to review his Batson allegations, we believe that the same remedy should apply. For a speedy trial violation,

the typical remedy seeks "to counteract any resulting prejudice demonstrated by a petitioner."  Burkett I, 826 F.2d at 1222. Thus, we recognize that a "discharge is warranted where attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights."  Id. (citations omitted).

"[H]abeas courts ordinarily have fashioned a remedy designed to spur the state courts to fulfilling their constitutional obligations to the defendant."  Heiser, 15 F.3d at 306 (citations omitted).  Here, Simmons' right to a jury selection process that is untainted by racial discrimination is at the core of his Fourteenth Amendment right to equal protection.  Batson, 476 U.S. at 97-98, 106 S. Ct. at 1723. Accordingly, the constitutional integrity of his current confinement is seriously in question.  Given the monumental delay in this case and Simmons' constitutionally suspect incarceration, we have considered whether an unconditional release would be appropriate.  Our difficulty lies in our inability to know whether the prosecution, in fact, systematically excluded African Americans from the jury.  If it were possible to review Simmons' Batson claim, and it were found to be without merit, then the prejudice stemming from the delay alone would be a slender reed on which to support his unconditional release.  See Simmons, 898 F.2d at 869 ("Release from custody is an extraordinary remedy, especially in a delay-of-appeal case where release would in effect nullify a state court conviction on grounds unrelated to the merits of the case.").  We conclude that the relief best

tailored to remedy the prejudice Simmons has suffered is a new trial and fair jury selection process.


                            VI.

        Therefore, we will reverse the judgment of the district court and remand the cause for it to grant Simmons' petition for a writ of habeas corpus, give the state an opportunity to retry Simmons, and specify the time period within which the state must retry or release him.


Simmons v. Beyer
No. 93-5370


HUTCHINSON, Circuit Judge, Concurring.


        In this difficult case, I believe the Court correctly applies Batson v. Kentucky, 476 U.S. 79 (1986), to Simmons's pre-Batson conviction, even though Simmons raises it in a collateral attack on his state conviction. Compare Allen v. Hardy, 478 U.S. 255 (1986) (per curiam) (courts should not retroactively apply new criminal procedure rule on collateral review of convictions becoming final before the new rule is announced) and Teague v. Lane, 489 U.S. 288 (1989) (same) with Griffith v. Kentucky, 479 U.S. 314 (1987) (courts should retroactively apply a new rule of

criminal procedure to those cases pending on direct review or not yet final when the new rule is announced).  I, therefore, concur in the result.

I agree with the majority that this case is made more difficult because the reconstructed record is inadequate to review fully the Batson issue.[8]  This particular difficulty implies that Batson's retroactive application to Simmons's case is important to the grant of the new trial remedy, which we all agree Simmons should be afforded.  The precise retroactivity problem this case presents, however, has never been directly before us or the Supreme Court.  I write separately because this important and unique retroactivity issue warrants an analysis.

Like the majority, I am reluctant to hold that the State's delay in hearing Simmons's appeal, in and of itself,

---

[8].  After concluding that Batson applies, the majority then recognizes a "self-evident" problem; i.e., it cannot decide the Batson issue because

> [n]o one recalls how many potential African American jurors were peremptorily challenged, and the assistant prosecutor does not remember and has no notes indicating why he struck individual venirepersons.  Both parties agree that further reconstruction hearings would be fruitless.  Simmons' Batson claim simply cannot be reviewed without a transcript of the voir dire to allow the reviewing court to examine whom the assistant prosecutor excluded and why.  We do not and cannot know whether Simmons' jury selection process was infected by racial discrimination.

See Majority Op. at 15.  Simmons, indeed, concedes as much.  See Brief for Appellant Brief at 26.

establishes sufficient prejudice permitting us to conclude, as a matter of law, that his general due process right to a speedy appeal has been violated.  See Opinion of Court, typescript at 20-21.  My decision, thus, rests not only upon the determination that this court should apply Batson, but also on two other critical factors; namely, the State's inordinate delay in granting Simmons's right of appeal and the partial loss of certain voir dire transcripts.[9]  It is the concurrent existence of these three factors——including the sad failure of New Jersey's otherwise generally efficient judicial system to provide Simmons with a reasonably prompt and adequate appeal of his 1977 murder conviction that allows us to grant the remedy of a new trial.

The first factor is the State's excessive delay, nearly fourteen years, in granting Simmons's right of appeal.  As we held in Burkett, 826 F.2d at 1221, a state's delay in affording a convicted person a direct appeal, as of right, may violate his general Fourteenth Amendment right to due process, as opposed to the more specific Sixth Amendment speedy trial right available to

_____
[9].  At the very least, this rationale avoids any need to remand this case for further fact finding on the prejudice issue.  See Hakeem v. Beyer, 990 F.2d 750, 771 (3d Cir. 1993) (remand for further fact finding on cause of delay relating to speedy trial issue); Burkett v. Cunningham, 826 F.2d 1208, 1227 (3d Cir. 1987) (remand on one of three convictions to make a determination concerning prejudice).  Any further delay in this case is undesirable.  Hence, like the majority, I favor simplifying the prejudice issue by avoiding reliance solely on the delay Simmons has suffered.  See Majority Op. at 20-21 ("If Simmons had received an adequate and effective, though excessively delayed appeal, then the issue of prejudice would become more difficult.").

state prisoners under the incorporation doctrine.  Id. at 1219.
In Burkett, we partially analogized the right to a speedy appeal
with the right to a speedy trial, but modified speedy appeal
analysis to emphasize the importance of a finding of prejudice.
Instead of prejudice being merely a key factor or the "most
important factor," see Hakeem, 990 F.2d at 760, we stated that
"prejudice is generally a necessary . . . element of a due
process claim."  Burkett, 826 F.2d at 1221 (quoting United States
v. Lovasco, 431 U.S. 783, 790 (1977)).  In adapting the
"prejudice" factor to the judgment of appellate delays, we then
delineated three interests that are protected by prompt appeals:

> (1) prevention of oppressive incarceration
> pending appeal; (2) minimization of anxiety
> and concern of those convicted awaiting the
> outcome of their appeals; and (3) limitation
> of the possibility that a convicted person's
> grounds for appeal, and his or her defenses
> in case of reversal and retrial, might be
> impaired.

Id. at 1222.

Having made these observations, we nevertheless refused
to hold that an on-going, combined delay of at least five years
and three months in sentencing Burkett and processing his appeal
established prejudice as a matter of law as to one of his three
convictions.  Id. at 1227.  Instead, we remanded Burkett's case
to the district court for fact finding as to prejudice and
thereafter for balancing the degree of prejudice, if any, with
the other Barker factors to determine whether Burkett's right to
a speedy appeal had been violated.  Id.; see Barker v. Wingo, 407

U.S. 514, 530 (1972) (enunciating four factors to consider in speedy trial analysis).

The second critical factor in this case concerns the loss of the transcript relating to the voir dire of Simmons's jurors before he received his direct appeal nunc pro tunc as a result of his federal habeas petition. This partial loss of the transcript is material on prejudice only if Batson applies retroactively to Simmons's case.[10] The majority relies on the loss of this part of the trial transcript in holding that this case involves prejudice as a matter of law. I, too, believe this fact weighs heavily. It permits us easily to conclude that the reconstructed record is inadequate to afford Simmons an adequate and effective appeal. See Majority Op. at 15. Thus, the majority states: "we cannot evaluate the last two Clemons factors because transcripts of the voir dire are not available. . . ." Majority Op. at 14; see United States v. Clemons, 843 F.2d 741 (3d Cir.), cert. denied, 488 U.S. 835 (1988).[11]

---

[10]. It is the inability to review the Batson issue, not a violation of Batson itself, that is material to our finding of prejudice in this case. Simmons also argues that the loss of the voir dire and other transcript parts affected his ability to establish that his trial in the Patterson vicinage was constitutionally unfair entitling him to have his motions for a venue or venire change granted. I believe this argument lacks merit and, like the majority, am unable to discern any other issue Simmons has raised for which the reconstructed record is inadequate. See Majority Op. at 2 n.1.

[11]. Interestingly, the majority then concludes that the reconstructed record is sufficient to show a prima facie Batson claim. See Majority Op. at 14. In so concluding, I believe the majority goes beyond Simmons's argument. As I read his brief, he

Thus, as noted, it is clear that <u>Batson</u>'s retroactive application to this collateral attack on Simmons's pre-<u>Batson</u> conviction is essential to our mandate requiring New Jersey to grant Simmons a new trial within a reasonable time, to be determined by the district court, or release him.  I turn now to an analysis of the retroactivity issue.

In <u>Griffith</u>, the text of the Supreme Court's holding states that <u>Batson</u> is to be applied to all cases "pending on direct review or not yet final" at the time <u>Batson</u> was decided. <u>Griffith</u>, 479 U.S. at 328.  Additionally, the <u>Griffith</u> court stated that "final" "mean[s] a case in which a judgment of conviction has been rendered, <u>the availability of appeal exhausted</u>, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."  <u>Id.</u> at 321 n.6 (emphasis added) (citations omitted).  <u>Accord</u> <u>Allen</u>, 478 U.S. at 258 n.1 (citation omitted).  Because of the inordinate delay in Simmons's appeal that is attendant upon the circumstances of this case, he had not yet "exhausted" the "availability of appeal" when <u>Batson</u> was decided.  In fact, his direct appeal, which took place after <u>Batson</u>, was not decided until nearly fourteen years after he was convicted, albeit only <u>nunc</u> <u>pro</u> <u>tunc</u>, as a result of the district court's earlier order in this <u>habeas</u> proceeding.

(..continued)
argues he cannot make a prima facie showing of a <u>Batson</u> violation on the reconstructed record.  <u>See</u> Brief of Appellant at 26. Whether we analyze Simmons's case on the basis of this concession or, as the majority does, it is the deficiency in the reconstructed record with respect to the <u>voir</u> <u>dire</u> transcript that establishes irremediable prejudice to Simmons.

It can at least be argued, however, that literal application of Griffith's text to Simmons's case is in tension with one of the Griffith rationales. Simmons is not similarly situated to Batson, Griffith, or Brown (the petitioner whose case the Supreme Court consolidated with Griffith). Rather, Simmons, convicted in December 1977 of a brutal murder on strong but not overwhelming evidence, is a "chance beneficiary" of counsel's failure to secure him the timely, direct appeal that the State of New Jersey grants as a matter of right to all persons convicted of a crime.[12] See Griffith, 479 U.S. at 327. Griffith, Brown, and Batson were tried in the same court within three months of each other. Id. The same prosecutor presented the State's case against all three and appears to have used peremptory challenges to deny them the right to be judged by an impartial jury, from which no person was excluded because of race. Id.

Simmons was tried almost ten years before Batson was even decided. Except for his counsels' inattention, his appeal would have been filed in January 1978, within 45 days of his conviction or, at least, no more than 30 days thereafter.[13] And,

_____

[12]. Once a state gives a convicted criminal defendant a right to appeal, the Fourteenth Amendment due process clause requires the State to provide an adequate means, including effective assistance of counsel, to process the appeal. See Evitts v. Lucey, 469 U.S. 387 (1985); Douglas v. California, 372 U.S. 353 (1963); Griffin v. Illinois, 351 U.S. 12 (1956).

[13]. New Jersey Rule 2:4-4(a) permits its appellate courts to extend the time for appeal by 30 days. Compare New Jersey R. 2:4-4(a) (1995) ("The appellate court, upon a showing of good cause and the absence of prejudice, may extend the time fixed by R. 2:4-1(a) (final judgment) . . . for a period not exceeding 30 days, but only if the notice of appeal or notice of petition for certification was in fact served and filed within the time as

with the consequent likelihood that the appellate process would have been completed long before Batson, Simmons's conviction would have become unassailable.[14]

I do not believe it can fairly be said that Simmons, unlike Griffith or Brown, will suffer from any "actual inequity" if Batson's new rule is not retroactively applied to his 1977 conviction. See Griffith, 479 U.S. at 327-28. Whatever inequities may exist press upon other persons who were convicted by juries from which African Americans were shamefully excluded and then had those convictions affirmed in timely appeals before Batson was decided, or perhaps the people of New Jersey who may fail to understand how a person convicted of direct participation in the brutal murder of an elderly doctor, who ventured into the streets in the middle of the night to respond to an emergency, is afforded a new trial or released.

Indeed, at first glance it might appear that Simmons has been saved by the legal fiction of an appeal nunc pro tunc

(..continued)
extended.") with Notice to Appellate Bar, 100 N.J.L.J. 1208 (1977) ("The Supreme Court has directed the Appellate Division to relax Rule 2:4-4(a) in favor of allowing an out-of-time appeal nunc pro tunc on behalf of an indigent criminal defendant in any case where it satisfactorily appears that the defendant, personally, within time, requested his trial counsel or the Public Defender's Office to file an appeal on his behalf."). Unfortunately, the State did not appreciate the need to relax the strict time limits on appeal with respect to Simmons's case. If it had, this habeas proceeding might well have been avoided.

[14]. I use the term "unassailable" because I agree with the Court that none of the issues Simmons has raised, except his hybrid due process-equal protection claim based on Batson and the State's inability to afford him adequate appellate review in a timely fashion, have merit. See Majority Op. at 2 n.1.

that is no less a fiction because it is stated in a dead, ancient language.[15]  Put simply, direct review was still available in Simmons's case when Batson was decided only as a result of a federal court's collateral review of his state court conviction which otherwise had every appearance of finality.

In addition, literal application of the Griffith holding to Simmons's case creates tension between Griffith, which espoused a bright line rule favoring retroactivity in all cases that are "pending on direct review or not yet final," and Teague, where the Supreme Court barred retroactive application of Batson, and other cases wherein a new constitutional principle of criminal procedure that clearly breaks with past precedent is announced, to cases on collateral review.[16]  Here, but for the collateral attack, which Simmons successfully pursued in this federal habeas proceeding, his New Jersey conviction would have almost certainly been "final" before Batson was decided.

---

[15].  This particular fictitious form of time travel may merely reflect the vestigial survival of the common law rule that courts lack jurisdiction to hear an untimely appeal.  It fails, however, to disguise the fact that Simmons's conviction had every appearance of finality long before Batson, but is now subject to review only by virtue of this collateral proceeding.

[16].  The two exceptions espoused in Teague, which require the retroactive application of a new rule if it (1) "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" Teague, 489 U.S. at 311 (quoting Mackey v. United States, 401 U.S. 667, 692 (1972) (Harlan, J., concurring)), and (2) "implicate[s] the fundamental fairness of the trial" and factual innocence, id. at 312, do not apply here.

_Griffith_ itself did not directly address the problem of applying _Batson_ to _nunc pro tunc_ appeals.  As a result, it is arguably distinguishable on its facts from Simmons's case.  Indeed, _Griffith_, _Allen_, and _Teague_ are all factually distinguishable from Simmons's case.  Nevertheless, I think _Griffith_ should be applied to this and all other cases involving appeals _nunc pro tunc_, not only because such a decision comports with a literal reading of _Griffith_'s holding, but also because of _Griffith_'s genesis in Justice Harlan's objections to the case specific approach to retroactivity adopted in _Linkletter v. Walker_, 381 U.S. 618 (1965).  _See_ _Mackey v. United States_, 401 U.S. 667 (1971) (Harlan, J., concurring); _Desist v. United States_, 394 U.S. 244 (1969) (Harlan, J., dissenting).

The application of new rules to any case pending on direct review when the rule is announced, including appeals _nunc pro tunc_ resulting from a collateral attack on a conviction, seems to me to represent a reasonable compromise between the unfairness incident to retroactive application of any procedural rule to trial proceedings concluded before the new rule is announced and the temptation of legislative free wheeling that courts confront when they are permitted prospectively to apply new departures in the law.  Moreover, the application of new law to appeals _nunc pro tunc_ does not seem to be inconsistent with the views of Justice Harlan or that of Justice Powell in his concurrence in _Griffith_, which states:

> It is to be hoped that the Court then will adopt the Harlan view of retroactivity in cases seeking relief on habeas petitions.

> Under that view, habeas petitions generally
> should be judged according to the
> constitutional standards existing at the time
> of conviction.

Griffith, 479 U.S. at 328 (Powell, J., concurring).[17]

It is perhaps unfortunate that retroactive application of Batson is required to grant Simmons any effective relief.[18] His only viable constitutional claim, which the Court describes as a hybrid equal protection-due process claim, results from a combination of the Batson problem, New Jersey's long delay in granting Simmons his right to appeal, and the consequent loss of part of the trial transcript material to Batson. Nevertheless, I am satisfied with the result reached by the Court. Accordingly, I concur with its decision to vacate the district court's order denying Simmons's petition for a writ of habeas corpus and remand with instructions conditionally to grant the writ, unless the State grants Simmons a new trial within a reasonable time, to be determined by the district court.

[17]. In his reference to Justice Harlan's view on retroactivity, Justice Powell may be using the term "convicted" interchangeably with the term "final." See Mackey, 401 U.S. at 682-83 (Harlan, J. concurring); see also Griffith, 479 U.S. at 329 (Rehnquist, C.J., dissenting) (new constitutional rules governing criminal prosecutions should not apply in collateral proceedings challenging convictions that become final before the rule is announced).

[18]. It is doubly unfortunate because neither Simmons himself nor the State had given us any analysis of the retroactivity problem and, by his reliance on State v. Gilmore, 511 A.2d 1150 (N.J. 1986) (New Jersey's Batson analogue), which plainly does not apply to Simmons's case, this Court, the state appellate court, and the district court have all been left without the benefit of any real advocacy concerning retroactivity as it applies to appeals nunc pro tunc.